## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

SILVER STEER, INC., d/b/a Zona Rosa
Nightclub,

        Petitioner

v.

THE CITY OF CLANTON,
ALABAMA,

        Respondent.

)
)
)
)
)
)
)
)
)
)
)

2008 FEB 26 A 10: 16

DEBRA P. HACKETT. CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Civil Action No.:

2:08CV136-MEF

---

## COMPLAINT FOR INJUNCTIVE RELIEF

---

1.      This Court has jurisdiction to hear this action pursuant to 28 U.S.C. 1343.

2.      Venue lies in this District pursuant to 28 U.S.C. § 1391.

3.      Petitioner is a corporation organized and existing under the laws of the State of Alabama, and having its principal place of business in Chilton County, Alabama.

4.      Defendant, City of Clanton, Alabama (herein the "City") is an incorporated municipality located within Chilton County, Alabama.

5.      This is an action to redress the past deprivation and prevent the future deprivation by the City, their officers, agents, servants, employees and attorneys and upon those persons in active concert or participation with them, acting under color of state law and/or ordinance of rights, privileges and immunities secured by the Constitutions of the United States and the State of Alabama, namely 42 U.S.C. § 1983, the due process clause of the Fourteenth Amendment and Alabama Const. Art. I, § 13.

6.     Plaintiff holds and at all times relevant hereto has been the holder of a club liquor license (Type 032) issued by the Alabama Alcoholic Beverage Control Board (herein the "ABC Board"). Moreover, Plaintiff holds and at all times relevant hereto has been the holder of a similar license ("club license") issued by the City pursuant to the City's Alcoholic Beverages Ordinance.

7.     On or about January 14, 2008, an ABC Hearing Commission entered a decision suspending Plaintiff's state club liquor license for 180 days. A copy of said suspension is attached hereto as Exhibit "A."

8.     Also, on or about January 14, 2008, the City Council for the City of Clanton met in regular session at the Clanton City Hall. Present at said meeting were Mayor Billy Joe Driver and Councilmembers Ronald Porter, Ann Baker, Elem Hill, Robert K. Easterling and Mary Mell Smith.

9.     During the course of said council meeting a resolution was passed revoking the "club license" for Silver Steer, Inc. The resolution in its entirety reads as follows:

> *COUNCILMEMBER SMITH MADE THE MOTION TO REVOKE THE CLUB LICENSE FOR SILVER STEER, INC. DOING BUSINESS AS ZONA ROSA DUE TO NUMEROUS VIOLATIONS OF THE CITY'S RULES FOR OPERATING A CLUB. THE MOTION WAS SECONDED BY COUNCILMEMBER HILL, VOTE IN FAVOR WAS UNANIMOUS.*

See Minutes from January 14, 2008 Regular Meeting of City Council of the City of Clanton attached hereto as Exhibit "B."

10.     The minutes do not reflect the specific "violations" that are alleged to have occurred and instead only vaguely reference "numerous violations of the City's rules for operating a club." No rule number or Code section is referenced. In fact, the record is completely devoid of even any non-specific or general allegations regarding Plaintiff's business posing a threat to the welfare, health, peace or morals of the people of the City.

11.    The minutes do not reflect that Silver Steer, Inc. was given prior notice of the revocation hearing or that the council was to consider revoking the "club license" and in fact no such prior notice was given. Plaintiff learned of the "revocation" after-the-fact by virtue of a newspaper article printed in the Clanton Advertiser on January 15, 2008, a copy of which is attached hereto as Exhibit "C."

12.    Moreover, Plaintiff was not notified of the ordinances under which the City pursued revocation or that Plaintiff would have an opportunity to present evidence and call witnesses or given an opportunity to defend or refute the charges. In fact Plaintiff was given no such opportunity.

13.    Plaintiff was, is and remains unaware as to what "violations" the City alleges have occurred. In fact, subsequent to January 14, 2008, the Plaintiff by and through its attorneys has made formal requests upon the City that the City provide Plaintiff with the basis for its decision to revoke the "club license" and all lawful authority upon which the decision was based. See January 24, 2008, letter from Plaintiff's council to council for the City of Clanton attached hereto as Exhibit "D."

14.    On or about January 24, 2008, Plaintiff filed a Petition for Judicial Review of the ABC Board's suspension of Plaintiff's state club liquor license.

15.    On or about February 5, 2008, Plaintiff attempted to amend its Petition to add the City of Clanton as a defendant. See CERTIFICATE OF COUNSEL TO DISPENSE WITH NOTICE REQUIREMENT FOR TEMPORARY RESTRAINING ORDER for further information relating thereto.

16.    Said Petition for review has been remanded by Circuit Judge Charles Price for further proceedings before the ABC Board. Pursuant to said remand, the suspension of Petitioners club liquor license is stayed pending a hearing by the ABC Board. See February 20, 2008 letter from Plaintiff's council to council for the ABC Board attached hereto as Exhibit "E."

17.    Meanwhile, the City has failed and/or refused to provide a response of any kind. Specifically, the City has failed and/or refused to provide a response to plaintiff's counsel's written request referenced above, the City attorney has failed and/or refused to return telephone calls from Plaintiff's counsel on January 23 and 24. In fact, Plaintiff's counsel traveled from Birmingham to Clanton on January 24, 2008, to review the City's documentation on the revocation and while there made numerous attempts to contact the city attorney by telephone but never got beyond the receptionist for the city attorney. At that time, Plaintiff's counsel offered to meet with the city attorney at any time that was convenient to discuss the matter but was told that the city attorney was "too busy" to meet with Plaintiff's counsel. See CERTIFICATE OF COUNSEL TO DISPENSE WITH NOTICE REQUIREMENT FOR TEMPORARY RESTRAINING ORDER for further information relating thereto.

18.    Moreover, the City failed to file a responsive pleading of any kind in the Circuit Court proceeding in Montgomery County, and failed to make an appearance at or attend the to hearing on Plaintiff's Motion for Preliminary injunction on February 12, 2008 before the Honorable Charles Price.

19.    As such, not only did the City fail to provide Plaintiff with prior notice and an opportunity to hear and defend the charges prior to the City's action, the City has furthermore deprived Plaintiff of its constitutional right to be made aware of the basis of the Council's decision and the laws, rules and/or regulations that Plaintiff is alleged to have violated, even subsequent to said action.

20.    Moreover, on or about January 15, 2008, Defendant City of Clanton corresponded with the ABC Board stating and notifying the ABC Board that the City had "revoked the club license" for Silver Steer, Inc. See January 15, 2008 letter from Clanton City Clerk Debra Orange

to the ABC Board, a copy of which is attached hereto as Exhibit "F."

21.    The ABC Board has asserted said letter and the license revocation referenced therein as a defense in the Plaintiff's Petition for Judicial Review in the Circuit Court of Montgomery County (now on remand before the ABC Board), claiming that to conduct the Judicial Review sought therein would be "a waste of the Court's time and resources unless and until the petitioner has acquired a general retail business license."  In fact, Plaintiff was unaware of such notification and learned of it only by virtue of the same being submitted as an attachment to the Motion to Dismiss filed by the ABC Board in that matter.

22.    The City's Alcoholic Beverage Ordinance, a copy of which is attached hereto in its entirety as Exhibit "G," makes no specific provisions for revocation proceedings.  However, there is no question but that the City is without the authority to arbitrarily revoke the Plaintiff's club license or otherwise suspend Plaintiff's due process rights in connection with a license revocation. See Constitution of the United States, Amendment XIV; Alabama Const. Art. I, § 13; Sanders v. City of Dothan, 642 So. 2d 437 (ala. 1994); O'Bar v. Town of Rainbow City,  269 Ala. 247; 112 So. 2d 790 (Ala. 1959);  Cavu Club v. City of Birmingham, Ala., 110 So.2d 307; City of Birmingham v. Bollas, 209 Ala. 512, 96 So. 591; Richardson v. Reese, 165 Tenn. 661, 57 S.W.2d 797; Friedland v. Ingersoll, 249 App.Div. 623, 291 N.Y.S. 32; 33 Am.Jur., Licenses, § 65; 53 C.J.S. Licenses § 42; 18 Ala.Lawyer 132, 137; 3 McQuillin, Mun.Corp., 2d Ed., 1108.

23.    Plaintiff has been aggrieved by the City's revocation of Plaintiff's "club license" in that said decision deprives Plaintiff of life, liberty or property without due process of law; was unjust, arbitrary, capricious and unreasonable; conclusory; not supported by substantial evidence; was or is characterized by an abuse of discretion or a clearly unwarranted exercise of discretion; was deficient in that the City acted beyond the power conferred upon it by law and the decision did not

comply with applicable statutory requirements. In this regard, the City's decision has wrongfully frustrated Petitioner's ability to lawfully operate its business and prohibited the same.

24.     Defendant City's revocation of Plaintiff's "club license" under the circumstances described herein was violative of 42 U.S.C. § 1983 and deprives Plaintiff of its rights under the due process clause of the Fourteenth Amendment of the U.S. Constitution and Alabama Const. Art. I, § 13.

25.     The manner in which the determination was made is not in accordance with constitutional standards of due process and equal protection. The revocation of Plaintiff's license did not meet applicable constitutional standards and, since done under color of state statute, constitute a violation of 42 U.S.C. § 1983. Covin v. Alabama Board of Examiners in Counseling, 712 So. 2d 1103 (Ala.Civ.App. 1999); Ex Parte Alabama Board of Examiners in Counseling, et al., 796 So. 2d 355 (Ala. 2000).

26.     The conduct of the City and the actions and decisions set forth more fully hereinabove were undertaken with malice and in bad faith.

27.     That unless the Court enters an Order restraining the enforcement of the refrenced Resolution and/or directing that the City reinstate Plaintiff's "club license" and/or club liquor license (Type 032), the Plaintiff will suffer the aforementioned irreparable harm.

28.     Plaintiff seeks a declaratory judgment that the City's resolution revoking Plaintiff's "club license" is null and void, of no effect, and unauthorized by law.

29.     In view of the City's actual and threatened enforcement of the Resolution, and Plaintiff's contention that the Resolution and the enforcement thereof are null and void, of no effect and unauthorized by law, there is an actual controversy within the jurisdiction of this Court. A binding declaration by this Court as to the validity of the Resolution will effectively adjudicate the

rights of the parties.

30.    Plaintiff also seeks a temporary restraining order, a preliminary injunction and a permanent injunction preventing the City from taking any further action enforcing the Resolution and ordering that the City reinstate Plaintiff's "club license."

31.    An injunction is necessary to prevent irreparable harm to the Plaintiff, for which Plaintiff would otherwise have no adequate remedy at law. Specifically, Plaintiff is unable to operate its business. Moreover, Plaintiff has and will continue to suffer more than monetary injury. The Resolution revoking Plaintiff's "club license" will continue to cause Plaintiff's loss of good will in the industry with respect to Plaintiff's reputation as a law abiding business and furthermore will have a substantial impact on Plaintiff's ability to service and retain its clientele.

WHEREFORE, Plaintiff prays the Court to grant unto the Plaintiff the following relief as to the ABC Board and the City, their officers, agents, servants, employees and attorneys and upon those persons in active concert or participation with them:

A.    To set aside the City's said decision and hold it for naught;

B.    To restrain the City and their officers, agents, employees or servants from the enforcement of the Resolution;

C.    That pending the final hearing and determination, a temporary restraining order and a preliminary injunction issue restraining the City, their officers, agents, employees or servants from the enforcement of the Resolution.

C.    To enter an Order directing the City to reinstate Plaintiff's "club license" and/or club liquor license (Type 032);

D.    To set this matter for hearing so that a preliminary injunction may be entered

pursuant to ARCP 65 as set forth above;

E.     To award Plaintiff such other, further, or different relief as may be just and proper;

and

F.     To require the Defendants to pay the costs of these proceedings.

Respectfully submitted,

JAMES S. WARD
KENNETH JOE WILSON, JR.
Attorney for Petitioner
WARD & WILSON, L.L.C.
2100 Southbridge Parkway, Suite 580
Birmingham, Alabama 35209

JAMES S. WARD
KENNETH JOE WILSON, JR.
Attorney for Petitioner
WARD & WILSON, L.L.C.
2100 Southbridge Parkway, Suite 580
Birmingham, Alabama 35209

DEFENDANT'S ADDRESS:

CITY OF CLANTON
Clanton City Hall
Clanton, AL 35045

VERIFICATION

STATE OF ALABAMA

COUNTY OF JEFFERSON

I, ANWAR SULTAN, manager and operator of Zona Rosa Night Club, hereby certify that I have read and reviewed the preceding Complaint and Motion for Ex Parte Temporary Restraining Order and any all attachments thereto, and that I have personal knowledge of the allegations therein and verify the accuracy and truthfulness of the same.

_____
Anwar Sultan

STATE OF ALABAMA

COUNTY OF JEFFERSON

Sworn and subscribed before me this the 25 day of _____, 2008.

_____
Notary Public
My Commission Expires: 8/15/09

# EXHIBIT A

# ABC BOARD

Alabama Alcoholic Beverage Control Board

Emory Folmar
Administrator

John E. Richardson
Assistant Administrator

R. Frank Buckner
Board Chairman

Samuetta H. Drew
Board Member

Robert W. "Bubba" Lee
Board Member

January 14, 2008

Silver Steer Inc.
d/b/a Zona Rosa Nightclub
800 Jackson Avenue
Clanton, AL

Gentlemen:

On Wednesday, January 9, 2008, you and your Attorney, W.T. Denson, appeared before the ABC Hearing Commission to respond to the following charges(s):

**Charge #1:**   Alleged violation of ABC RULES & REGULATIONS, 20-X-6-.06 "Person in Charge" sign not posted.  Ticket #A34165

**Charge #2:**   Alleged violation of ABC RULES & REGULATIONS, 20-X-6.03(3) Empty bottles not properly disposed of.  Ticket #A34166

**Charge #3:**   Alleged violation of ABC RULES & REGULATIONS, 20-X-6-.04(6) Inadequate Lighting.  Ticket #A34167

**Charge #4:**    Alleged violation of ABC RULES & REGULATIONS, 20-X-6-.09(1)(d)  Accepting Improper ID.  Ticket #A34168

**Charge #5:**   Alleged violation of Title  28-11-8, **Code of Alabama** (1975) Failure to obtain Tobacco Permit.  Ticket #A34169

**Charge #6:**   Alleged violation of ABC RULES & REGULATIONS, 20-X-5-.03(4) Inaccurate membership records.  Ticket #A34170

**Charge #7:**   Alleged violation of ABC RULES & REGULATIONS, 20-X-5-.03(5) Failure to have guests sign in.  Ticket #A34171

**Charge #8:**   Alleged violation of Title  28-3A-12, **Code of Alabama** (1975) Serving non-members.  Ticket #A34172

**Charge #9:**   Alleged violation of ABC RULES & REGULATIONS, 20-X-6-.01(8) Violating Criminal Law or Statute.  Ticket #A34173

At the start of the hearing, you entered a not guilty plea to each of the aforementioned charges.

The Commission then heard testimony from ABC Agents Darick Wilson, Nikki Parker, and Manny Orozco, regarding the operation of your business on May 18, 2007.

Agent Wilson's testimony revealed that the "Person in Charge" sign was posted as required. However, there was no name on it. He also said that a bottle of a "McCall" mixer was empty at the serving station and it had not been rendered useless or destroyed. His testimony also revealed the lights were off inside and a flashlight was required for the officers' safety and for them to observe the operation of the business. Agent Wilson told the Commission that you also did not have the proper permit to sell tobacco products and this has been verified with ABC Licensing Bureau.

Agent Parker's testimony revealed only three of your patron had any form of identification and they were not acceptable under the guideline of the ABC Rules and Regulations. Agent Parker testified that during the inspection you could not and did not produce your club membership records when asked. However, you did present a spiral notebook that was at the door. The notebook contained some scribbling, which could not be deciphered.

Agent Orozco, who is very fluent in Spanish, gave supporting testimony. He told the Commission he could not understand any of the markings in the notebook.

He testified that several customers there were consuming alcoholic beverages. However, when he asked for a membership card and ID, no one came forward. Regarding Charge #9, the licensee employed illegal aliens Agent Orozco said you could not produce the I-9 forms (U.S. Code Title 8, Section 1324 (a) required by the federal government to employ workers.

You were given the opportunity to present evidence or to question each witness. Your testimony and statements revealed the following: the "Person in Charge" sign had fallen down, the "McCalls" mixer bottle, not destroyed, was still in the serving station.

You also claimed you were told you could sell tobacco even though there was no permit application on file. You also claimed that each member is required to have a card and that everyone in the club that night held up a card when asked for one. You also testified that each agent was lying when they said no one had produced a club card. You testified that each guest had signed in and that you had I-9's on everyone, but you did not bring them with you.

After hearing the testimony, reviewing the evidence and your file, the Commission voted and unanimously rendered the following decision on the aforementioned charges.

| | |
|---|---|
| **Charge #1:** | **Guilty-Written Warning** |
| **Charge #2:** | **Guilty-Written Warning** |
| **Charge #3:** | **Not Guilty** |
| **Charge #4:** | **Not Guilty** |
| **Charge #5:** | **Guilty-$150.00 Fine** |
| **Charge #6:** | **Guilty-$250.00 Fine** |
| **Charge #7:** | **Guilty-$150.00 Fine** |

**Charge #8:**    **Guilty-30 Days Suspension**

**Charge #9:**    **Guilty-180 Days Suspension to run concurrent with Charge #8**

You have a right to appeal this decision to the ABC Board by submitting a letter to that effect within fifteen (15) days after your receipt of this notification. Saturdays and Sundays are counted in this time period. NOTE: In accordance with ABC rules & Regulations #20-X-3-.02(7), an appealing licensee or applicant must pay to the ABC Board the reasonable cost ($8.00 per page) of transcribing the record before the ABC Hearing Commission. An approximate cost for transcribing your case would be $ 80.00. Payment is required in advance of such transcription. In no case should the ABC Board consider an appeal from the ABC Hearing Commission where the transcription cost has not been paid. If the appeal prevails, you may request the money for transcription be returned to the appealing licensee or applicant.

Statutory Authority: ABC RULES & REGULATIONS #20-X-3-.01 (1); Titles 28-3-40, 28-3- 43, 28-3-49, 28-3A-24(b) and 41-22-12, Code of Alabama (1975), as amended.

Sincerely,

Emory Folmar
Administrator

EF/JT/KJP
cc: Lt. Hill
    Agent Wilson
    Sheriff, Chilton Co.
    Chief, Clanton P.D.

The above letter was delivered on the ___16___ day of ___January___, 2008.

___William T. Denson___
SIGNATURE

___Attorney___
TITLE

___Patrick K Wilson___
AGENT

# EXHIBIT B

STATE OF ALABAMA                                    REGULAR MEETING

CHILTON COUNTY                                      JANUARY 14, 2008

THE CITY COUNCIL OF THE CITY OF CLANTON, ALABAMA, COUNTY OF CHILTON, MET IN
REGULAR SESSION AT THE CLANTON CITY HALL AT 5:00 P.M. ON JANUARY 14, 2008.
MAYOR BILLY JOE DRIVER CALLED THE MEETING TO ORDER, UPON ROLL CALL THE
FOLLOWING WERE FOUND TO BE PRESENT:

BILLY JOE DRIVER
MAYOR

RONALD PORTER
ANN BAKER
ELEM HILL
ROBERT K. EASTERLING
MARY MELL SMITH
COUNCILMEMBERS

DEBRA ORANGE, CITY CLERK
JOHN HOLLIS JACKSON, JR., ATTORNEY

THOSE FOUND TO BE ABSENT: NONE

COUNCILMEMBER SMITH MADE THE MOTION TO APPROVE THE MINUTES OF
DECEMBER 20, 2007. THE MOTION WAS SECONDED BY COUNCILMEMBER BAKER, VOTE IN
FAVOR WAS UNANIMOUS.

COUNCILMEMBER BAKER MADE THE MOTION TO APPROVE THE FOLLOWING BILLS FOR
PAYMENT. THE MOTION WAS SECONDED BY COUNCILMEMBER PORTER, VOTE IN FAVOR
WAS UNANIMOUS.

| | |
|---|---:|
| CHILTON CONTRACTORS, INC. | $ 39,125.00 |
| CHILTON/CLANTON PUBLIC LIBRARY | 25,000.00 |
| CHILTON COUNTY CHAMBER OF COMMERCE | 10,000.00 |
| CHILTON COUNTY HUMANE SOCIETY | 7,500.00 |
| CHILTON PAVING & ASPHALT | 32,523.19 |
| GILCO CONTRACTING | 118,151.75 |
| HULL & RUSSELL, PC | 11,150.00 |
| MEYERCORD REVENUE COMPANY | 8,683.20 |
| MUNICIPAL WORKERS COMPNESATION FUND | 67,778.02 |
| NEWELL BUSH | 127,180.00 |
| TAYLOR-MADE TRANSPORTATION | 19,633.45 |
| W.H. THOMAS OIL COMPANY, INC. | 18,997.82 |

COUNCILMEMBER EASTERLING MADE THE MOTION TO RESCIND THE RESOLUTION
PASSED ON DECEMBER 20, 2007 ON THE WATER SYSTEM IMPROVEMENT GRANT. THE
MOTION WAS SECONDED BY COUNCILMEMBER BAKER, VOTE IN FAVOR WAS
UNANIMOUS.

THE FOLLOWING RESOLUTION WAS THEN PRESENTED.

RESOLUTION

WHEREAS, the Appalachian Regional Commission and the Environmental Protection Agency have the authority to award grants for water system improvements; and

WHEREAS, grant assistance is needed for Phase I of the Clanton Water Treatment Plant Upgrade Project; and

WHEREAS, based on a Pre-Application, the City of Clanton has been selected to receive a $ 200,000 Appalachian Regional Commission grant for upgrading the water treatment plant; and

WHEREAS, the City of Clanton anticipates making application to the Environmental Protection Agency for a State and Tribal Assistance Grant (STAG) in the amount of $ 1,067,089 as a result of Congressional appropriation for the purpose of upgrading the water treatment plant.

NOW, THEREFORE, BE IT RESOLVED by the Clanton City Council as follows:

1. That submission of a Grant Application to the Appalachian Regional Commission in the amount of $ 200,000 and a Grant Application to the Environmental Protection Agency in the amount of $ 1,067,089 are, hereby, authorized.

2. That the Mayor is authorized to sign any and all documents to obtain said grants.

3. That the City of Clanton will provide the 45% local share of the total project cost or $ 1,036,711.

THIS RESOLUTION IS, HEREBY, ADOPTED by the Clanton City Council this the 14[h] day of January, 2008. .

ATTEST:                                          SIGNATURE:

_Debra Orange_                                   _Billy Joe Driver_
Debra Orange, City Clerk                         Billy Joe Driver, Mayor

_January 14, 2008_                               _January 14, 2008_
Date                                             Date

COUNCILMEMBER SMITH MADE THE MOTION TO PASS THE ABOVE RESOLUTION WHICH WILL REPLACE THE RESOLUTION PASSED ON DECEMBER 20, 2007. THE MOTION WAS SECONDED BY COUNCILMEMBER PORTER, VOTE IN FAVOR WAS UNANIMOUS.

COUNCILMEMBER EASTERLING MADE THE MOTION TO APPROVE THE BEER LICENSE FOR RIVERA PRODUCE, LLC DOING BUSINESS AS MI PUEBLO SUPERMARKET LOCATED AT 210B

7TH STREET SOUTH. THE MOTION WAS SECONDED BY COUNCILMEMBER SMITH, VOTE IN FAVOR WAS UNANIMOUS.

COUNCILMEMBER BAKER MADE THE MOTION TO APPROVE DEBRA ORANGE ATTEND CERTIFICATION TRAINING FOR MASTER MUNICIPAL CLERK FEBRUARY 6TH THROUGH THE 8TH IN TUSCALOOSA. THE MOTION WAS SECONDED BY COUNCILMEMBER HILL, VOTE IN FAVOR WAS UNANIMOUS.

THE MOTION TO APPROVE SALLY WALL AND DAVID BAKER ATTEND A TURF SEMINAR IN MONTGOMERY ON FEBRUARY 6TH WAS MADE BY COUNCILMEMBER EASTERLING AND SECONDED BY COUNCILMEMBER BAKER, VOTE IN FAVOR WAS UNANIMOUS.

COUNCILMEMBER EASTERLING MADE THE MOTION TO HIRE TRENT GRAY PART TIME IN THE PARK EFFECTIVE JANUARY 18TH. THE MOTION WAS SECONDED BY COUNCILMEMBER BAKER, VOTE IN FAVOR WAS UNANIMOUS.

COUNCILMEMBER PORTER MADE THE MOTION TO HAVE MAYOR DRIVER SIGN THE PURCHASE AGREEMENT ON THE BOMB DOG. THE MOTION WAS SECONDED BY COUNCILMEMBER SMITH, VOTE IN FAVOR WAS UNANIMOUS.

THE FOLLOWING RESOLUTION WAS THEN INTRODUCED REGARDING VACATING ALLEY FOR JIMMY WAYNE EASTERLING.

RESOLUTION

WHEREAS, JIMMY WAYNE EASTERLING AND SANDRA DIAN EASTERLING ARE THE OWNERS OF ALL THE PROPERTY ABUTTING ON OR ADJACENT TO THE FOLLOWING DESCRIBED PROPERTY THAT IS PROPOSED TO BE VACATED, SITUATED IN THE CITY OF CLANTON, CHILTON COUNTY, ALABAMA:

> THE ALLEY SITUATED BETWEEN SEVENTH STREET AND THE L&N/CSX RAILROAD DESCRIBED AS FOLLOWS: FROM THE NORTH RIGHT-OF-WAY OF THIRD AVENUE TO THE SOUTH RIGHT-OF-WAY OF FOURTH AVENUE/HIGHWAY 22 BETWEEN THIRD AVENUE NORTH AND FOURTH AVENUE NORTH RUNNING WEST FROM THE WEST RIGHT-OF-WAY OF SEVENTH STREET TO THE EAST RIGHT-OF-WAY OF L&N/CSX RAILROAD.

WHEREAS, THE ABOVE OWNERS ARE DESIROUS OF VACATING SAID TRACT OF LAND DESCRIBED ABOVE AND REQUEST THAT THE ASSENT OF THE MAYOR AND COUNCIL OF THE CITY OF CLANTON, ALABAMA, BE GIVEN AS REQUIRED BY LAW IN SUCH CASES; SUBJECT, HOWEVER, TO ALL EXISTING RIGHTS OF WAY OR EASEMENTS FOR PUBLIC UTILITIES AND TO ALL UTILITY FACILITIES PRESENTLYSITUATED IN SAID VACATED AREA AND SUBJECT TO SAID PROPERTY OWNERS AGREEING TO MAINTAIN THAT PORTION OF THE EXISTING SEWER LINES EXTENDING NORTH FROM THE NORTH RIGHT-OF-WAY OF THIRD AVENUE NORTH;

THAT AFTER VACATION OF THE ABOVE DESCRIBED TRACT OF LAND, AND ALL PUBLIC RIGHTS AND EASEMENTS THEREIN, CONVENIENT MEANS OF INGRESS AND EGRESS TO AND FROM THE PROPERTY WILL BE AFFORDED TO ALL OTHER PROPERTY OWNERS OWNING PROPERTY IN OR NEAR THE TRACT OF LAND EMBRACED IN SAID MAP, PLAT OR SURVEY BY THE REMAINING STREETS, AVENUES, OR HIGHWAYS DEDICATED BY SAID MAP, PLAT OR SURVEY.

NOW, THEREFORE, BE IT RESOLVED BY THE MAYOR AND COUNCIL OF THE CITY OF CLANTON, ALABAMA, THAT THEY DO HEREBY ASSENT TO THE SAID JIMMY WAYNE

EASTERLING AND SANDRA DIAN EASTERLING VACATING SAID TRACT OF LAND AS DESCRIBED ABOVE AND THAT THE ABOVE DESCRIBED PROPERTY BE AND THE SAME IS HEREBY VACATED AND ANNULLED AND ALL PUBLIC RIGHTS AND EASEMENTS THEREIN DIVESTED OF THE PROPERTY; SUBJECT, HOWEVER, TO ALL EXISTING RIGHTS OF WAY OR EASEMENTS FOR PUBLIC UTILITIES AND TO ALL UTILITY FACILITIES PRESENTLY SITUATED IN SAID AREA VACATED HEREBY.

COUNCILMEMBER EASTERLING MADE THE MOTION TO PASS THE ABOVE RESOLUTION. THE MOTION WAS SECONDED BY COUNCILMEMBER HILL, VOTE IN FAVOR WAS UNANIMOUS.

COUNCILMEMBER EASTERLING MADE THE MOTION TO ACCEPT THE BID RECEIVED ON DECEMBER 10, 2007 OF $21,622.99 FOR REPAIRS TO GARBAGE TRUCK. THE MOTION WAS SECONDED BY COUNCILMEMBER SMITH, VOTE IN FAVOR WAS UNANIMOUS.

COUNCILMEMBER PORTER MADE THE MOTION TO GRANT BILLY MIXON A MEDICAL LEAVE OF ABSENCE FOR THE PURPOSE OF SEEING ABOUT HIS ONLY SON IN CALIFORNIA. THE MOTION WAS SECONDED BY COUNCILMEMBER HILL, VOTE IN FAVOR WAS UNANIMOUS.

COUNCILMEMBER EASTERLING MADE THE MOTION TO HIRE HERDIS MINOR AS A PART TIME TRUCK DRIVER IN THE SANITATION DEPARTMENT. THE MOTION WAS SECONDED BY COUNCILMEMBER SMITH, VOTE IN FAVOR WAS UNANIMOUS.

THE FOLLOWING ORDINANCE WAS THEN INTRODUCED.

## ORDINANCE No. 1-08

**An Ordinance to Amend Ordinance No. 10-92,
An Ordinance Providing for Impounding Dogs
Running at Large on the Streets, Highways,
Or Alleys of the City of Clanton, a Municipal
Corporation, and providing for the
Redemption or Destruction of said Dogs,
Providing for Inoculation; Inoculation Tag
Required; Impounding of Dogs Found Running
At Large Not Bearing Current Inoculation
Tag; Impounding of Dogs Running at Large
On Premises Other Than Owner; Authorizing
Officers to go on Premises and Penalty For
The Violation Thereof; Providing or Employment
Of Dog Control Officer and Defining his Duties.**

BE IT ORDAINED by the City Council of the City of Clanton, Alabama, a municipal corporation, in a regular meeting assembled, that Ordinance No. 10-92 and any and all amendments thereto, be and the same is hereby, amended as follows:

Section 3.  Animal Inoculation Required:
Section 3 of said Ordinance No. 10-92 is deleted in its entirety and is amended by the addition thereto of the following:

145

It shall be unlawful for any person to own, possess, keep or harbor a dog within the City of Clanton without having such dog inoculated annually for rabies, as required by Section 3-7A-4 of the 1975 *Code of Alabama*, as last amended.

Section 4. Inoculation Tag--Required on Dogs at Large:
Section 4 of said Ordinance No. 10-92 is deleted in its entirety and is amended by the addition thereto of the following:

It shall be unlawful for any person to permit to run or be upon a street, alley, sidewalk, thoroughfare or public place within the City, unless secured by a suitable leash, any dog which does not have attached to it a dog inoculation tag, as required by Section 3-7A-4 of the 1975 *Code of Alabama*, as last amended.  Nothing contained in this Section shall be construed as permitting any such dog, whether tagged or untagged, to become a nuisance or to run at large upon the premises or any person other than the owner thereof.

Be it further ordained that all further terms and conditions of said ordinance, as last amended, are hereby confirmed and adopted except as herein provided.

Read, approved and adopted on this the 14th day of January, 2008.

CITY OF CLANTON, ALABAMA,
A municipal corporation

BY:

_____
Mayor

Authenticated:

_____
City Clerk

COUNCILMEMBER PORTER MOVED THAT ALL RULES GOVERNING THE COUNCIL WHICH MIGHT UNLESS SUSPENDED, PREVENT THE PASSAGE AND ADOPTION OF THE ORDINANCE AT THIS MEETING BE AND THE SAME ARE SUSPENDED FOR THE PURPOSE OF PERMITTING THE SAID ORDINANCE TO BE FINALLY PASSED AND ADOPTED AT THIS MEETING, COUNCILMEMBER EASTERLING SECONDED THE MOTION. THE QUESTION WAS PUT BEFORE THE COUNCIL ON ROLL CALL VOTE WITH THE FOLLOWING RESULTS

AYES
BILLY JOE DRIVER
ROBERT K. EASTERLING
RONALD PORTER
ANN BAKER
ELEM HILL
MARY MELL SMITH

146

<u>NAYS</u>
NONE

MAYOR DRIVER DECLARED THE MOTION ADOPTED BY UNANIMOUS VOTE AND RULES SUSPENDED.

COUNCILMEMBER BAKER MOVED THAT THE ORDINANCE NUMBER 1-08 BE BROUGHT ON FOR IMMEDIATE CONSIDERATION AND COUNCILMEMBER SMITH SECONDED THE MOTION. THE QUESTION NOW BEING PUT, A ROLL CALL WAS TAKEN WITH THE FOLLOWING RESULTS:

<u>AYES</u>
BILLY JOE DRIVER
ROBERT K. EASTERLING
RONALD PORTER
ANN BAKER
ELEM HILL
MARY MELL SMITH

<u>NAYS</u>
NONE

THEREUPON, COUNCILMEMBER SMITH MOVED THAT SAID ORDINANCE BE ADOPTED AS PRESENTED AND COUNCILMEMBER PORTER SECONDED THE MOTION. THE QUESTION NOW BEING PUT AS TO THE FINAL PASSAGE OF THE SAME, THE ROLL WAS CALLED WITH THE FOLLOWING RESULTS:

<u>AYES</u>
BILLY JOE DRIVER
ROBERT K. EASTERLING
RONALD PORTER
ANN BAKER
ELEM HILL
MARY MELL SMITH

<u>NAYS</u>
NONE

COUNCIILMEMBER SMITH MADE THE MOTION TO REVOKE THE CLUB LICENSE FOR SILVER STEER, INC. DOING BUSINESS AS ZONA ROSA DUE TO NUMEROUS VIOLATIONS OF THE CITY'S RULES FOR OPERATING A CLUB. THE MOTION WAS SECONDED BY COUNCILMEMBER HILL, VOTE IN FAVOR WAS UNANIMOUS.

THERE BEING NO FURTHER BUSINESS TO COME BEFORE THE COUNCIL, UPON MOTION DULY MADE BY COUNCILMEMBER EASTERLING AND SECONDED BY COUNCILMEMBER PORTER, THE MEETING WAS ADJOURNED.

READ, APPROVED AND ADOPTED THIS THE 28TH DAY OF JANUARY 2008.

BILLY JOE DRIVER, MAYOR

ATTEST:
DEBRA ORANGE, CITY CLERK

147

# EXHIBIT C



# The Clanton Advertiser

## Council denies club license to Zona Rosa

*By Mike Kelley*

Clanton's City Council last night passed a motion that ordered City Clerk Debbie Orange to not sell a club license to Silver Steer, operating as Zona Rosa. The motion passed unanimously.

Clanton Mayor Billy Joe Driver said the action was taken due to "numerous violations of the city's rules for operating a club." He said 70 people last weekend were in the club who did have proper identification or a club membership as required by city ordinance.

"There is inadequate parking at the club, and several other violations have occurred there," Driver told the council. Driver said the club had been investigated by the Alabama Bureau of Beverage Control as well.

Without a license, the business cannot operate as a club.

In other business, the council adopted an ordinance that brings the city's animal control ordinance in compliance with state law and rescinded a resolution passed at the last meeting to accept federal funds for a matching fund grant for the city's Water Treatment Plant. Other grants obtained for the project increased the city's matching funds to $1 million. The council passed another resolution approving the new matching fund amount.

When asked by council member Ronnie Porter for an update on the construction of the Enterprise Road Bridge, Driver said he hopes the bridge would be completed by early February.

The council approved a motion for Orange to attend a city clerk certification seminar in Tuscaloosa and a resolution authorizing Sally Wall and David Baker, both of the city's parks department, to attend a turf seminar in Montgomery.

It also passed a motion that approved an agreement for the purchase of a bomb dog with the Chilton County Board of Education. The agreement with the seller states that the dog will be given a health inspection to make sure it is healthy, especially free of heartworms. The agreement also states the bomb dog will be checked again in six months to make sure it is still clear of heartworms.

Police Chief James Henderson said the seller would have to "make the dog good" if heartworms are found in the six-month checkup.

Charles Traywick asked the council to consider revising its current rezoning application to make sure the city's zoning board can easily determine if all requirements are met by the person requesting the rezoning. He also asked that terminology used in the application have the same meaning as the zoning ordinance itself, to clear up any misunderstandings.

Traywick said he wanted to make the request of the council after an application for rezoning property on Highway 31 South presented to the zoning board last week was confusing. Traywick owns property adjacent to the property under rezoning consideration.

Mayor Driver said the council would consider the request.

### Police take closer look at Maple Springs fire

Chilton County Sheriff's investigators went back to the Maple Springs Baptist Church fire site yesterday to determine whether or not there was any connection with Saturday's burglary-arson at Providence No. 1 Baptist Church.

### Honoring confederate vets

Two organizations will converge upon an historic Chilton County cemetery this Saturday to honor three Confederate States of America veterans.

### Former Clanton councilmember dies yesterday

Former Clanton City Council member Donnie Nelson died Monday morning at Brookwood Medical Center in Birmingham. He had been diagnosed recently with cancer.

### MySpace agrees to adopt rules to stop predators

NEW YORK - Under mounting pressure from law enforcement and parents, MySpace agreed Monday to take steps to protect youngsters from online sexual predators and bullies, including searching for ways to better verify users' ages.

### Commission looks at moving metal detectors

The Chilton County Commission yesterday discussed what the priority should be for the building in which it does business: safety or convenience.

### Council denies club license to Zona Rosa

Clanton's City Council last night passed a motion that ordered City Clerk Debbie Orange to not sell a club license to Silver Steer, operating as Zona Rosa. The motion passed unanimously.

### Commissioner Wyatt to run for tax assessor office

Several people threw their hats into the ring for various elected offices last night during a Chilton County Republican Party meeting, among them Allen Wyatt for the office of County Tax Assessor.

**Maplesville approves three-percent pay raise for workers**

MAPLESVILLE - All Maplesville town employees will see a pay increase beginning with the next pay period.

## CORRECTION

The Clanton Advertiser would like to correct two errors that appeared in a story entitled "Local student keeps chasing dreams in the face of cancer," which was published in the Sunday, Jan. 13 edition. The story incorrectly stated that Maplesville High School senior Jason Stone "is not spending his time being thankful to everyone who helped him believe in getting better." Stone is in fact very thankful. The story also indicated Stone had received three chemotherapy treatments, when in fact he had only received two. The Clanton Advertiser regrets the errors and is happy to set the record straight.

© Copyright Clanton Advertiser, All Rights Reserved.

A Boone Newspapers Inc. publication.

# EXHIBIT D

## WARD & WILSON, LLC

### A T T O R N E Y S   A T   L A W

2100 SOUTHBRIDGE PARKWAY
SUITE 580
BIRMINGHAM, ALABAMA 35209
—•—
(205) 871-5404
FACSIMILE (205) 871-5758

JAMES S. WARD

KENNETH JOE WILSON, JR.

Writer's Email Address: kjwilson@wardwilsonlaw.com

January 24, 2008

**VIA FACSIMILE**
Mr. John Hollis Jackson
Jackson & Jackson, LLP
P.O. Box 1818
Clanton, Alabama 35046-1818

     **Re:**    **Silver Steer, Inc.**

Dear Hollis:

     This will serve as a follow-up to the voicemail that I left for you Wednesday afternoon and my numerous attempts to reach you by telephone this afternoon. As I indicated in my voicemail, my law firm represents Anwar Sultan and Silver Steer, Inc.

     As I also mentioned in the voicemail I am attempting to contact you about the City of Clanton's recent decision to revoke Silver Steer's liquor license. Without exhaustively addressing all of the issues here, suffice it to say that the City Council's decision raises very serious constitutional issues. If any prior notice of the license revocation was supplied to Silver Steer I am unaware of it. In fact, Mr. Sultan learned of the revocation by reading an article in the newspaper after the fact.

     Compounding this due process issue is the fact that we are now being denied access to the Resolution passed by the Council on January 14, 2008 revoking the license. So, not only was my client not provided with notice and an opportunity to hear and defend the charges prior to the City's action, it is now being deprived of the right to be made aware of the basis of the Council's decision and the details as to what is encompassed within the Council's decision.

     Ms. Orange was kind enough to provide me with a copy of Section 3-1 through 3-25 of the Clanton City Code. If there is any other statutory authority that you believe authorized the Council's actions here then I would ask that you provide that information to me immediately. Otherwise, unless the City is prepared to extend my client the due process rights to which it is lawfully entitled we will have no choice but to move forward with an action under Section 1983 and/or other

January 24, 2008
Page 2

applicable law.

I will look forward to receiving your response within twenty-four (24) hours.

Respectfully,
**WARD & WILSON, L.L.C.**

Kenneth Joe Wilson, Jr.

KJWjr\dda
cc:    James S. Ward
       Anwar Sultan

```
************ -COMM. JOURNAL- ************** DATE JAN-24-2008 ***** TIME 16:36 ********

        MODE = MEMORY TRANSMISSION          START=JAN-24 16:35    END=JAN-24 16:36

        FILE NO.=234

    STN    COMM.   ONE-TOUCH/  STATION NAME/TEL NO.                PAGES     DURATION
    NO.            ABBR NO.

    001    OK      🖀           12057552009                        003/003   00:00:36


                                                          -WARD WILSON LLC        -

    ********************************** -2058715758      - ***** -   205 871 5758- ********
```

## WARD & WILSON, L.L.C.

ATTORNEYS AT LAW
2100 SOUTHBRIDGE PARKWAY, SUITE 580
BIRMINGHAM, ALABAMA 35209
TEL (205) 871-5404
FAX (205) 871-5758

JAMES S. WARD
E-MAIL: jward@wardwilsonlaw.com

KENNETH JOE WILSON, JR.
E-MAIL: kjwilson@wardwilsonlaw.com

January 24, 2008

# FACSIMILE TRANSMISSION

**TO:**          Hollis Jackson

**FAX NO:**      205-755-2009

**FROM:**        Kenneth Joe Wilson, Jr.

**RE:**          Silver Steer, Inc.

**COMMENTS:**    Please see the attached.

Total Pages Including Cover Page: 3

Sent By:         Deedra Atkisson
                 06-3855-01

If you do not receive legible copies of all pages, please call (205) 871-5404

### CONFIDENTIALITY NOTICE

The information contained in this facsimile transmission is attorney client privileged or is other confidential information intended only for use or the individual or entity named above, unless otherwise indicated or obvious from the nature of the transmission. If you are not the intended recipient, you are hereby notified that any disclosure, distribution, copying other use of this communication is strictly prohibited. If you received this communication in error or are not sure whether it is privileged, please immediately notify us by telephone, and return the transmittal to us at the above address via the U. S. Postal Service at our expense.

## WARD & WILSON, L.L.C.

ATTORNEYS AT LAW

2100 SOUTHBRIDGE PARKWAY, SUITE 580
BIRMINGHAM, ALABAMA 35209
TEL (205) 871-5404
FAX (205) 871-5758

JAMES S. WARD
E-MAIL: jward@wardwilsonlaw.com

KENNETH JOE WILSON, JR.
E-MAIL: kjwilson@wardwilsonlaw.com

January 24, 2008

# FACSIMILE  TRANSMISSION

**TO:** Hollis Jackson

**FAX NO:** 205-755-2009

**FROM:** Kenneth Joe Wilson, Jr.

**RE:** Silver Steer, Inc.

**COMMENTS:** Please see the attached.

Total Pages Including Cover Page: 3

Sent By: Deedra Atkisson
06-3855-01

**If you do not receive legible copies of all pages, please call (205) 871-5404**

### CONFIDENTIALITY NOTICE

The information contained in this facsimile transmission is attorney client privileged or is other confidential information intended only for use or the individual or entity named above, unless otherwise indicated or obvious from the nature of the transmission. If you are not the intended recipient, you are hereby notified that any disclosure, distribution, copying other use of this communication is strictly prohibited. If you received this communication in error or are not sure whether it is privileged, please immediately notify us by telephone, and return the transmittal to us at the above address via the U. S. Postal Service at our expense.

# EXHIBIT E

## WARD & WILSON, L.L.C.

ATTORNEYS AT LAW
2100 SOUTHBRIDGE PARKWAY, SUITE 580
BIRMINGHAM, ALABAMA 35209
TEL (205) 871-5404
FAX (205) 871-5758

JAMES S. WARD
E-MAIL: jward@wardwilsonlaw.com

KENNETH JOE WILSON, JR.
E-MAIL: kjwilson@wardwilsonlaw.com

February 20, 2008

**VIA E-MAIL**
Robert L. Martin, III
State of Alabama Alcoholic Beverage Control Board
2715 Gunter park Drive West
Montgomery, Alabama 36109

        RE:     **Silver Steer, Inc.**
                **W&W File No.: 06-3855-01**

Dear Bob:

        This will serve as a follow-up to our telephone conversation. I have prepared a new Notice appealing the Commission's decision to the Board. A copy is attached. As you can see, I am treating this like a remand and I believe that it is consistent with Judge Price's Order.

        This will also confirm my understanding that upon the filing of this appeal the Board considers the suspension of Silver Steer's license stayed. It is also my understanding that notwithstanding the issues with the City of Clanton, the Board will not attempt to enforce the Commission's suspension until a final decision is reached in this matter.

        Finally, it would be my understanding that the Board will set this matter for a hearing in the coming days. I would appreciate it if you would see to it that copies of any notices are sent to my office. Thank you.

                        Respectfully,
                        **WARD & WILSON, LLC**

                        *Joe Wilson*

                        Kenneth Joe Wilson, Jr.

KJW/dda
Enclosure
cc:     James S. Ward
        Anwar Sultan

# EXHIBIT F



EXHIBIT
A



# City of Clanton

Post Office Box 580 • Clanton, Alabama 35046-0580 • Telephone (205) 755-4051

— COUNCIL —

Billy Joe Driver, Mayor
Debra Orange, City Clerk
John Hollis Jackson, Jr., City Attorney

Ann Baker
Ronnie Porter
Klem Hill, Pro. Tem.

Mary Mell Smith
Robert K. Easterling

January 15, 2008

Alabama Alcoholic Beverage Control Board
Post Office Box 1151
Montgomery, Alabama 36101

Dear Mr. Orozco, Jr.,

The City Council revoked the club license for Silver Steer, doing business as Zona Rosa at its regular meeting of January 14, 2008.

If you need any further information please feel free to contact me at 205-755-1105.

Sincerely,

Debra Orange
City Clerk

## "A good place to visit – A better place to live"

# EXHIBIT G

## ARTICLE I. IN GENERAL

**Secs. 3-1—3-25. Reserved.**

## ARTICLE II. WHOLESALE AND RETAIL SALES

### DIVISION 1. GENERALLY

**Sec. 3-26. Definitions.**

The following words, terms and phrases, when used in this article, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

*Alcoholic beverage* means any alcoholic, spirituous, vinous, fermented or other alcoholic beverage, or combination of liquors and mixed liquor, a part of which is spirituous, vinous, fermented or otherwise alcoholic, and all drinks or drinkable liquids, preparations or mixtures intended for beverage purposes, which contain one-half of one percent or more of alcohol by volume, and shall include liquor, beer and wine, both fortified and table wine.

*Association* means a partnership, limited partnership, or any form of unincorporated enterprise owned by two (2) or more persons.

*Class I lounge* means any place or premises operated by a responsible person of good reputation in which alcoholic beverages of all types may be offered for sale for on-premises consumption only, but which does not meet the requirement for a restaurant-lounge, restaurant-pub or private club lounge, and which meets the requirements of the zoning ordinance of the city (Ordinance No. 6-70, as amended), and the following additional requirements:

(1)   The premises must have a lounge area of at least one thousand (1,000) square feet on one (1) floor in one (1) room, the area to be equipped with tables and chairs and capable of seating at least fifty (50) persons.

(2)   A minimum of five (5) off-street parking spaces shall be provided for each one hundred (100) square feet of lounge area, provided that this requirement shall be in addition to the parking requirements for any other uses in the same building.

*Class II lounge-package store* means a class II lounge retail liquor licensee who operates the licensed premises for the sale of all classes of alcoholic beverages for off-premises consumption only. In addition to meeting all other legal requirements, such licensee must also comply with the following additional conditions or requirements:

(1)   The licensee must have a minimum of five hundred (500) square feet of floor space for the display and sales of alcoholic beverages. The square footage required in this subsection shall not include areas of the licensed premises which are not open to the patrons or general membership of the licensee and which are used for office space, storage or restroom facilities.

(2)   The licensee is authorized to sell only alcoholic beverages, ice, mixers, snack items and tobacco products. The licensee shall not sell general grocery items, novelties, clothing or any other item of general merchandise.

(3)   *Reserved.*

(4)   *Reserved.*

(5)   The licensee shall at all times when open for business have in its possession a minimum inventory of five thousand dollars ($5,000.00) wholesale value of liquor or wine. The liquor must have been produced by at least two (2) distilleries, and the wine produced by at least two (2) wineries.

(6)   The licensee shall not advertise or identify its premises, prices or location by the use of a flashing or blinking sign, whether operated by electricity, gas or otherwise.

(7)   No person under the age of twenty-one (21) years shall be issued such license nor shall any corporation be issued such license unless the president thereof is over the age of twenty-one (21) years.

(8)   No person under twenty-one (21) years of age shall be admitted on the premises of

§ 3-26                                  CLANTON CODE

any class II lounge-package store as a patron or employee and it shall be unlawful for any class II lounge-package store licensee to admit any minor to the premises as a patron or employee.

*Corporation* means a corporation or joint stock association organized under the laws of this state, the United States, or any other state, territory or foreign country or dependency.

*Licensee* means any person licensed by the city council to sell liquor, wines, or malt and brewed beverages under the terms of this article.

*Liquor* means any alcoholic, spirituous, vinous, fermented or other alcoholic beverage, or combination of liquors and mixed liquor, a part of which is spirituous, fermented, vinous or otherwise alcoholic, and all drinks or drinkable liquids, preparations or mixtures intended for beverage purposes, which contain one-half of one percent or more of alcohol by volume, except beer and table wine.

*Malt or brewed beverages* means any beer, lager beer, ale, porter or similar fermented malt liquor containing one-half of one percent or more of alcohol by volume and not in excess of four (4) percent alcohol by weight and five (5) percent by volume, by whatever name the beverage may be called.

*Meal* means a diversified selection of food, some of which is not susceptible of being consumed in the absence of at least some articles of tableware, and which cannot be conveniently consumed while one is standing or walking about.

*Person* means a natural person, association or corporation. Whenever used in a clause prescribing or imposing a fine or imprisonment, or both, such terms as applied to an association shall mean the partners or members thereof and as applied to a corporation shall mean the officers thereof, except as to private clubs the term "person" shall mean such individual who, under the bylaws of such club, has jurisdiction over the possession and sale of liquor therein.

*Private club.*

(1)   *Class I private club* means a corporation or association organized or formed in good

faith by authority of law and which must have at least one hundred fifty (150) paid-up members. It must be the owner, lessee or occupant of an establishment operated solely for objects of a national, social, patriotic, political or athletic nature or the like, but not for pecuniary gain, as evidenced by Internal Revenue Service Qualified Exemption Status, and the property as well as the advantages of which belong to all the members and which maintains an establishment provided with special space and accommodations where, in consideration of payment, food, with or without lodging, is habitually served. The club shall hold regular meetings, continue its business through officers regularly elected, admit members by written application only and with a five-day waiting period, investigation and ballot, and charge and collect dues from elected members. The licensee may offer for sale all classes of alcoholic beverages for on-premises consumption.

(2)   *Class II private club* means a corporation or association organized or formed in good faith by authority of law and which must have at least one hundred (100) paid-up members. It must be the owner, lessee or occupant of an establishment operated solely for objects of a national, social, patriotic, political or athletic nature or the like. The club shall hold regular meetings, continue its business through officers regularly elected, admit members by written application only and with a five-day waiting period, investigation and ballot, and charge and collect dues from elected members. The licensee may offer for sale all classes of alcoholic beverages for on-premises consumption.

*Restaurant-lounge* means any place or premises in which food, refreshments and liquor are offered for consumption within the building in which the establishment is located, which is operated by a responsible person of good reputation and which meets the requirements of the zoning ordinance (Ordinance No. 6-70, as amended), and the following additional requirements:

(1)   The combined dining and kitchen areas shall total at least one thousand (1,000)

square feet on one (1) floor. The dining area shall be equipped with tables and chairs accommodating at least fifty (50) persons at one (1) time. Storage areas shall not be considered in meeting square footage requirements.

(2) The premises shall have a kitchen separate and apart from the dining area, but adjoining the dining area, in which food is prepared for consumption by the public and in which the food or meals served in the dining area are prepared.

(3) At least one (1) meal per day shall be served at least six (6) days a week, with the exception of holidays, vacations and periods of redecorating.

(4) Such place shall be duly licensed by the state alcoholic beverage control board for the sale of liquor for on-premises consumption.

(5) The serving of such food or meals shall constitute the principal business of such establishment, with the serving of liquor, malt or brewed beverages, wines or other alcoholic beverages being only an incidental part of the business. During any ninety-day period, the gross receipts from the serving of meals and food shall constitute more than sixty (60) percent of the gross receipts of the business.

*Restaurant-pub* means any place or premises in which foods, refreshments, and malt or brewed beverages or table wines, but not liquor, are offered for sale or consumption within the building in which the establishment is located, which is operated by a person of good reputation, and which meets the requirements of the zoning ordinance, (Ordinance No. 6-70, as amended), and the following additional requirements:

(1) The combined dining and kitchen areas shall total at least six hundred (600) square feet on one (1) floor. The dining area shall be equipped with tables and chairs accommodating at least thirty-five (35) persons at one (1) time. Storage areas shall not be considered in meeting square footage requirements.

(2) The premises shall have a kitchen separate and apart from the dining area, but adjoining the dining area, in which food is prepared for consumption by the public and in which the food or meals served in the dining area are prepared.

(3) At least one (1) meal per day shall be served at least six (6) days a week, with the exception of holidays, vacations and periods of redecorating.

(4) Such place shall be duly licensed by the state alcoholic beverage control board for the sale of malt or brewed beverages or table wines for on-premises consumption.

(5) The serving of such food or meals shall constitute the principal business of such establishment, with the serving of malt or brewed beverages or table wines being only an incidental part of the business. During any ninety-day period, the gross receipts from the serving of meals and food shall constitute more than sixty (60) percent of the gross receipts of the business.

*Wine* means all beverages made from the fermentation of fruits, berries or grapes, with or without added spirits, and produced in accordance with the laws and regulations of the United States, containing not more than twenty-four (24) percent alcohol by volume, and shall include all sparkling wines, carbonated wines, special natural wines, rectified wines, vermouths, vinous beverages, vinous liquors, and like products, including restored or unrestored pure condensed juice.

(1) *Fortified wine* means any wine containing more than fourteen (14) percent alcohol by volume but not more than twenty-four (24) percent.

(2) *Table wine* means any wine containing not more than fourteen (14) percent alcohol by volume. Table wine is not liquor, spirituous or vinous.

(Ord. No. 15-87, § 8-71, 9-28-87; Ord. No. 01-02, 2-25-02)

**State law reference**—Club liquor license, approval of municipality, Code of Ala. 1975, § 28-3A-12.

## Sec. 3-27. Purpose of article; territorial applicability.

In addition to its revenue purposes within the corporate limits, this article shall be deemed the exercise of the police power of the city for the protection of the public welfare, health, peace and morals of the people of the city, and all the provisions of this article shall be liberally construed for the accomplishment of this purpose. This article shall have application to that area within the corporate limits of the city, and none other.
(Ord. No. 15-87, § 8-66, 9-28-87)

## Sec. 3-28. Sales to which article applies.

The provisions of this article shall apply to the sale of alcoholic beverages.
(Ord. No. 15-87, § 8-69, 9-28-87)

## Sec. 3-29. Exceptions to article—Beverages stored for purpose of resale or reshipment.

This article shall not be construed to apply to any alcoholic beverages stored for the purpose of resale or reshipment outside the city and which are actually so resold or reshipped.
(Ord. No. 15-87, § 8-93, 9-28-87)

## Sec. 3-30. Same—Interstate commerce; federal agencies.

This article shall not be construed to tax interstate commerce or any business of the United States government or any branch or agency thereof.
(Ord. No. 15-87, § 8-94, 9-28-87)

## Sec. 3-31. Article cumulative.

This article shall not be construed to repeal any of the provisions of any other ordinance of the general license code of the city, but shall be held to be cumulative.
(Ord. No. 15-87, § 8-95, 9-28-87)

## Sec. 3-32. Adoption of state control board regulations.

The rules and regulations adopted and promulgated by the state alcoholic beverage control board, in effect as of May 15, 1972, and as may be adopted or amended thereafter by the beverage control board, the violation of which constitutes a misdemeanor, are hereby adopted as laws of the city.
(Ord. No. 15-87, § 8-67, 9-28-87)

## Sec. 3-33. Reporting of delinquencies.

It shall be the duty and responsibility of the city clerk's office to inform the chief of police of delinquent privilege taxes and licenses under this article.
(Ord. No. 15-87, § 8-77, 9-28-87)

## Sec. 3-34. Sale for off-premises consumption.

Except for beer and wine, no alcoholic beverages for off-premises consumption shall be sold, furnished or given away in the city by any city alcoholic beverage retail licensee or under any city alcoholic beverage retail liquor license except by a class II lounge or package store licensee under a license as provided for in this article. Nothing in this section is intended to conflict with the provisions of Code of Ala. 1975, § 28-3A-13.
(Ord. No. 15-87, § 8-71, 9-28-87)

### Sec. 3-35. Hours of sale in lounges, restaurants, etc.

All lounges, clubs, private clubs, restaurants or other places serving alcoholic beverages shall abate the sale of all whiskey, wine, beer or liquor at 2:00 a.m. These businesses may commence the sale of such beverages at 6:00 a.m., except Sunday. No sales shall be made between 2:00 a.m. Sunday and 6:00 a.m. Monday.
(Ord. No. 15-87, § 8-79, 9-28-87)

### Sec. 3-36. Bringing opened container onto licensed premises; seating of patrons.

It shall be unlawful for any person other than the licensee to bring on the premises of a licensee any bottle, can or container of alcoholic liquor or alcoholic beverage if the seal is broken. No person shall be served for on-premises consumption unless seated, and no patron shall move drinks from one table to the other.
(Ord. No. 15-87, § 8-80, 9-28-87)

### Sec. 3-37. Consumption outside licensed premises.

It shall be unlawful for any person to drink or consume alcoholic liquor or alcoholic beverages outside of the licensee's establishment, or to have in his possession any opened bottle, can or container of alcoholic beverages.
(Ord. No. 15-87, § 8-81, 9-28-87)

### Sec. 3-38. Duty to maintain order on premises; reports of assaults, affrays, etc.

It shall be the duty of each owner and of each manager or supervisor at any time charged with the management and supervision of any retail liquor, retail table wine or retail malt or brewed beverage licensed premises, while the premises are open to the public, to maintain order upon the premises and to exclude from the premises any person who is drunk and disorderly or who commits any breach of the peace, or who uses offensive, disorderly, threatening, abusive or insulting language, conduct or behavior with the intent to provoke a breach of the peace, or whereby a breach of the peace might be occasioned. It shall

be the duty of each officer, owner, manager or person in charge of any retail liquor, retail table wine or retail malt or brewed beverage licensed premises within the city immediately to make an appropriate report to the police department of the city of each assault, assault and battery or affray occurring on the licensed premises while the premises are open for business. It shall further be the duty of the person to make a written report of each of the incidents to the police department of the city and to the local field office of the state alcoholic beverage control board within thirty-six (36) hours thereof.
(Ord. No. 15-87, § 8-87, 9-28-87)

### Sec. 3-39. Identification of delivery vehicles.

Each person, firm or corporation making distribution sales or deliveries of alcoholic beverages in the city shall clearly display the company markings for license identification on the side panels of each vehicle making such delivery.
(Ord. No. 15-87, § 8-97, 9-28-87)

### Sec. 3-40. Consumption by employees on licensed premises prohibited.

It shall be unlawful for any owner, operator or employee of any licensee who is engaged in the sale of alcoholic beverages to consume or allow any employee to consume any alcoholic beverage while performing work or duty on the premises of the licensee.
(Ord. No. 15-87, § 8-98, 9-28-87)

### Sec. 3-41. Purchase by, sale to minors; possession by minors; misrepresentation of age.

(a) As used in this section, the word "minor" means a person less than twenty-one (21) years of age.

(b) It shall be unlawful:

(1) For any minor person, directly or indirectly, to purchase any malt or brewed beverages, any wine, or liquor, or any alcoholic or intoxicating beverage, or to attempt to purchase any of such beverages.

(2) For any minor person to possess or to consume any alcoholic or intoxicating beverages in any public place, or in any business establishment or club.

(3) For any person to sell, furnish, give to or purchase for any minor person any of such beverages.

(4) For any person, directly or indirectly, to falsely represent or attempt to falsely represent that a minor person is not a minor or is not under twenty-one (21) years of age, and, by means of such false representation, to aid or abet or attempt to aid or abet such minor person to buy, receive or otherwise obtain, or otherwise to aid or abet such minor person to buy, receive or otherwise obtain, any malt or brewed beverage, any wine or liquor, or any alcoholic or intoxicating beverages.

(c) For the purposes of this section the definitions of malt or brewed beverages, wine or liquor, or alcoholic or intoxicating beverages, shall be the same as they are defined in the Code of Ala. 1975, Tit. 28, as amended.

(d) It shall be considered a false representation that a person is not a minor, or is not under twenty-one (21) years of age, that the purchaser fails to disclose that the person making the purchase of, obtaining or securing such malt or brewed beverages, such wines or liquors, or such alcoholic or intoxicating beverages, is a minor person or has not reached the age of twenty-one (21) years.
(Ord. No. 15-87, § 8-82, 9-28-87)

### Sec. 3-42. Possession of open container or consumption in public place.

It shall be unlawful for any person to possess open containers of alcoholic beverages or consume alcoholic or intoxicating beverages while upon or along any public street, road or highway in the city or while in or on any automobile or other motor vehicle on or along any public street, road or highway in the city, or in any public place.
(Ord. No. 15-87, § 8-86, 9-28-87; Ord. No. 16-87, 11-9-87)

### Sec. 3-43. Sale or consumption on public grounds.

Any person who gives away, sells, serves or drinks any alcoholic or malt or brewed beverages in or on any city school building and grounds, recreation building, excluding any private recreation areas leased or rented to individuals or clubs for special events, city or city school playgrounds, city parks, and athletic fields is guilty of a misdemeanor, and upon conviction shall be punished as provided in this Code.
(Ord. No. 15-87, § 8-88, 9-28-87)

### Secs. 3-44—3-55. Reserved.

### DIVISION 2. LICENSE GENERALLY

### Sec. 3-56. Required; issuance; transfer.

(a) Establishments dealing in alcoholic beverages shall mean any business establishment operating within the corporate limits of the city which sells, dispenses, or allows the consumption of alcoholic beverages on the premises.

(b) No person shall engage in any business or establishment dealing in alcoholic beverages either as a wholesaler, retailer, distributor, or jobber within the corporate limits of the city without first having obtained from the city a license to conduct such business.

(c) No person shall engage in business as a retailer of malt or brewed beverages or alcoholic beverages in the corporate limits of the city without first having obtained from the city a license to do such business. Such license shall be issued by the city clerk, and shall first be approved by the city council at a regular meeting thereof before the license shall be valid. Such license shall be renewed on October 1 of each year thereafter. No reduction or proration of the fee for the license shall be allowed on account of not commencing its business on October 1, nor shall any rebate be allowed upon revocation, suspension or surrender of such license before the expiration thereof. Licenses issued under this article may not be assigned. If fifty-one (51) percent of the ownership of a corporate licensee or partnership is sold or transferred to a person not previously an owner of

ALCOHOLIC BEVERAGES

§ 3-57

the business and licensee during the license year, such sale or transfer shall be deemed to terminate the license issued under this article, and shall require a new license to be purchased and issued for the continuation of such business. Applications for the transfer of the location of any license issued under this article shall be administered as a new license, and the written application for such transfer shall be submitted with a transfer fee of twenty-five dollars ($25.00), which shall be refunded if the transfer is denied.

(d) Wholesalers, distributors and jobbers may obtain from the city, by the purchase thereof, a city license upon the presentation of a current valid state license.

(Ord. No. 15-87, § 8-68, 9-28-87; Ord. No. 16-87, 11-9-87; Ord. No. 17-96, 11-6-96)

**Sec. 3-57. Eligibility; application; approval.**

(a) *Sale for on-premises consumption.* It shall be unlawful for any person to engage in the on-premises retail sale of alcoholic beverages within the city without first obtaining a license as provided in this article. No person shall be granted a license for the sale of alcoholic beverages within the city unless such person operates a restaurant, hotel, restaurant-lounge, restaurant-pub, private club-lounge or lounge or is granted another retail license as provided in this article, unless such person is duly licensed by the state alcoholic beverage control board, unless such person is licensed to do so by the city and conforms to all the regulations provided in this article and to all regulations promulgated by the state alcoholic beverage control board, and unless such person pays all the license fees levied under this article. In addition, such person shall file written application on the form provided by the state with the city clerk prior to consideration of the application by the city council. Licenses shall be granted and issued by the city only to reputable individuals or to reputable corporations organized under the laws of the state or duly qualified thereunder to do business in the state, and then only when it appears that all officers and directors of the corporation are reputable individuals. In addition, no license shall be granted under this article if the establishment seeking such license is within the prohibited distance from any church building,

public or private school building, YMCA building or public playground. Such distance shall be set out and measured in a straight line as defined in section 3-58.

(b) *Sale of beer and wine for off-premises consumption.* No license shall be approved by the city council for the retail sale of malt and brewed beverages or wine for off-premises consumption unless the business of the licensed establishment is at least sixty (60) percent the sale of groceries, foodstuffs, gasoline and general merchandise. The retail sales of groceries, foodstuffs, gasoline and general merchandise shall constitute the principal business of the licensed establishment with the sale of malt or brewed beverages or wine being only an incidental part of the business. During any ninety-day period, the gross receipts from the sale of groceries, foodstuffs, gasoline and general merchandise shall constitute more than sixty (60) percent of the gross receipts. This subsection shall not be applicable to a class II lounge-package store or private club. In addition, no license shall be granted under this article until after the required alcoholic beverage control license shall have been duly issued by the state alcoholic beverage control board.

(c) *Application; approval by council.*

(1) All initial applications for a license shall be presented in writing at a regular meeting of the city council. The application shall be upon the appropriate form supplied by the city clerk and shall be signed and verified by oath or affirmation by the owner; in the case of a partnership, association or unincorporated enterprise, by a partner or member thereof; or in the case of a corporation by an executive officer thereof. The applicant shall deposit with the city clerk a filing fee of one hundred dollars ($100.00).

(2) An application for which the consent and the approval of the city council is sought shall contain all the information required, by the appropriate form, for the classification of alcoholic beverage license being applied for. Failure to submit information as prescribed therein shall render the application to the city void.

§ 3-57                                CLANTON CODE

(3) A license shall not be finally approved or denied until the next regular meeting of the city council; however, any application may be held under advisement for a longer period. No initial license shall be issued except on approval of the city council in a regular meeting, and the city council may in such regular meeting direct that any renewal license, specifying the particular license, be withheld.

(d) *Criteria for approval.* In rendering a decision on each application, the city council shall consider, among others, the following factors:

(1) The wishes and desires of the residents, real property owners and businesses within five hundred (500) feet of the property for which a license is sought.

(2) The character and reputation of the applicant and each partner, member, officer, member of board of directors, landlord and club manager.

(3) The criminal court records of the applicant and each partner, member, officer, member of the board of directors, landlord and club manager.

(4) The location of premises for which a liquor license is sought and the number of establishments presently holding liquor licenses for lounges, clubs, hotels and restaurants whose place of business is within five hundred (500) feet of the property for which a liquor license is sought.

(5) The compliance by the applicant and each partner, member, officer, member of the board of directors, landlord and club manager with the laws of the state and ordinances of the city.

The city council may refuse to approve a liquor license for a club when it appears that the operation would inure to the benefit of individual members, officers, agents or employees of the club rather than to the benefit of the entire membership of the club, or the licensee shows intent to sell alcoholic beverages for off-premises consumption on Sunday.

(e) *Bond.*

(1) If the city council decides to approve a lounge retail liquor license, a club retail liquor license, a restaurant retail liquor license for a hotel, or a restaurant retail liquor license for a restaurant, the city council shall approve the license only upon the condition that the lounge, club, hotel or restaurant licensee shall deliver to and maintain with the city a bond executed by the licensee and by some surety company authorized to do business in the city, payable to the city, in the sum of five thousand dollars ($5,000.00) as liquidated damages and conditioned that the licensee will comply with the laws of the state and the ordinances of the city, including but not limited to this article, relating to a lounge retail liquor licensee, a club retail liquor licensee, a restaurant retail liquor licensee for a hotel, or a restaurant retail liquor licensee for a restaurant, as the case may be.

(2) The bond shall be a forfeiture or liquidated damages bond and not an indemnity bond. Such bond shall include an endorsement to the effect that it shall not be canceled without the consent of the city council. The city may declare the bond forfeited as liquidated damages in its full amount of five thousand dollars ($5,000.00) upon the breach of any one (1) or more of the conditions. In lieu of the bond, such lounge, club, hotel or restaurant licensee may deposit with the director of finance of the city cash in the amount of five thousand dollars ($5,000.00) upon the same conditions and subject to forfeiture as set forth in this section. Failure by the city to declare the bond or deposit forfeited in the case of a breach of any one (1) or more of the conditions shall not operate as a waiver to do so in the event of any subsequent breach of any one (1) or more of the conditions.

(Ord. No. 15-87, § 8-70, 9-28-87; Ord. No. 16-87, 11-9-87)

**Sec. 3-58. Proximity of establishment to church, school or playground.**

(a) No privilege license shall be issued for the retail sale of alcoholic beverages where the en-

ALCOHOLIC BEVERAGES

§ 3-71

trance of the establishment for which such license is applied for is less than five hundred (500) feet from the main entrance of any church building, public or private school building, YMCA building or public playground. Such distance shall be set out and measured in a straight line.

(b) Where the church, public or private school or YMCA building was established after the licensed premises began operation under the license provided herein, and such operation has not been abandoned or discontinued for a period of six (6) months, the above distance restrictions do not apply.

(c) When measuring from a church, public or private school, or YMCA, the closest property line or lot line shall constitute the beginning point for measurement of property owned by either a church, YMCA or a public or private school. When measuring from the licensed premises, the closest point of the closest exterior of the building shall be used for measurement purposes.
(Ord. No. 16-96, 11-6-96)

**Secs. 3-59—3-70. Reserved.**

### DIVISION 3. LEVY OF LICENSE FEE

**Sec. 3-71. Generally.**

In addition to all other taxes imposed by law, any person, prior to the sale of any liquor, including wines and malt beverages, within the city, and prior to receiving a license from the city for such purpose, shall pay to the city an annual license fee. The license fee is fixed in this division and shall be in the amounts indicated in this division. Failure to continuously meet the requirements of a license specified shall be sufficient reason for revoking the license.
(Ord. No. 15-87, § 8-72, 9-28-87)

## Sec. 3-72. Beer wholesaler license.

Each person licensed as a beer wholesaler under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of two hundred fifty dollars ($250.00). In addition, each licensee will remit to the city clerk, on forms provided by the clerk, each month, the privilege or excise tax levied on the sales of beer by the Uniform Beer Tax Act (Code of Ala. 1975, § 28-3-190 et seq.). Wholesale beer dealers and distributors will not sell to any retail outlet that does not have a current city beer license.
(Ord. No. 15-87, § 8-72(a), 9-28-87)

## Sec. 3-73. Wine wholesaler license.

Each person licensed by the state alcoholic beverage control board as a wine wholesaler under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of two hundred seventy-five dollars ($275.00). In addition, each licensee will remit to the city clerk, on forms provided by the clerk, each month, the privilege or excise tax levied on the sales of table wine by the Alabama Table Wine Act (Code of Ala. 1975, § 28-7-1 et seq.). Wholesale wine dealers will not sell to any retail outlet that is not properly licensed by the city to sell wine.
(Ord. No. 15-87, § 8-72(b), 9-28-87)

## Sec. 3-74. Beer and wine wholesaler license.

Each person licensed as a beer and wine wholesaler under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of three hundred seventy-five dollars ($375.00). In addition, each licensee will remit to the city clerk, on forms provided by the clerk, each month, the privilege or excise tax levied on the sales of beer by the Uniform Beer Tax Act (Code of Ala. 1975, § 28-3-190 et seq.). In addition, each licensee will remit to the city clerk, on forms provided by the clerk, each month, the privilege or excise tax levied on the sales of table wine by the Alabama Table Wine Act (Code of Ala. 1975, § 28-7-1 et seq.).
(Ord. No. 15-87, § 8-72(c), 9-28-87)

## Sec. 3-75. Warehouse license.

Each person licensed by the state alcoholic beverage control board to receive, store or warehouse

alcoholic beverages within the state for transshipment inside and outside the state shall pay to the city an annual license fee of two hundred dollars ($200.00).
(Ord. No. 15-87, § 8-72(d), 9-28-87)

## Sec. 3-76. Club retail liquor license.

Each person licensed by the state alcoholic beverage control board to operate a club, class I or class II, under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of one thousand dollars ($1,000.00) if a class I club, and one thousand five hundred dollars ($1,500.00) if a class II club. In addition to the stated license fee, each person shall pay to the city, on or before the fifteenth day of the calendar month next succeeding each separate calendar month, for the privilege of having engaged in such business, an additional license tax of ten (10) percent of the gross receipts of such business derived from the sale of all alcoholic beverages, except beer and table wines, received during such immediate next preceding calendar month.
(Ord. No. 15-87, § 8-72(e), 9-28-87)

## Sec. 3-77. Lounge retail liquor license.

Each person licensed by the state alcoholic beverage control board to operate a retail liquor lounge under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of one thousand five hundred dollars ($1,500.00). In addition to the stated license fee, each such retail liquor lounge licensee shall pay, on or before the fifteenth day of the calendar month next succeeding each separate calendar month, for the privilege of so engaging in such business in the calendar month, an additional license tax of ten (10) percent of the gross receipts of all such business derived from the sale of alcoholic beverages, except beer and table wines, received during such immediate next preceding month.
(Ord. No. 15-87, § 8-72(f), 9-28-87)

## Sec. 3-78. Retail license for off-premises consumption.

Each person licensed by the state alcoholic beverage control board to sell liquor, wine, table wine and beer at retail for off-premises consumption

CLANTON CODE

under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of one thousand five hundred dollars ($1,500.00).

(Ord. No. 15-87, § 8-72(g), 9-28-87; Ord. No. 16-87, 11-9-87; Ord. No. 4-92, 2-24-92)

### Sec. 3-79. Restaurant retail liquor license.

Each person licensed by the state alcoholic beverage control board to sell alcoholic beverages in connection with the operation of a restaurant under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of one thousand dollars ($1,000.00). In addition to the stated license fee, each such person shall pay to the city, on or before the fifteenth day of the calendar month next succeeding each separate calendar month, for the privilege of having engaged in such business, an additional license tax of ten (10) percent of the gross receipts of all such business derived from the sale of all alcoholic beverages, except beer and table wine, received during such immediate next preceding calendar month.

(Ord. No. 15-87, § 8-72(h), 9-28-87)

### Sec. 3-80. Retail table wine license for off-premises consumption.

Each person licensed by the state alcoholic beverage control board to sell table wine at retail for off-premises consumption under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of seventy-five dollars ($75.00).

(Ord. No. 15-87, § 8-72(i), 9-28-87)

### Sec. 3-81. Retail table wine license for on-premises and off-premises consumption.

Each person licensed by the state alcoholic beverage control board to sell table wine at retail for on-premises and off-premises consumption under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of seventy-five dollars ($75.00), unless such person shall have paid for an on-premises liquor license.

(Ord. No. 15-87, § 8-72(j), 9-28-87)

### Sec. 3-82. Retail beer license for on-premises or off-premises consumption.

Each person licensed by the state alcoholic beverage control board to sell beer for on-premises

and off-premises consumption under Code of Ala. 1975, § 28-3A-1 et seq., shall pay the city an annual license fee of seventy-five dollars ($75.00).

(Ord. No. 15-87, § 8-72(k), 9-28-87; Ord. No. 16-87, 11-9-87)

### Sec. 3-83. Retail beer license for off-premises consumption.

Each person licensed by the state alcoholic beverage control board to sell beer for off-premises consumption under Code of Ala. 1975, § 28-3A-1

ALCOHOLIC BEVERAGES                                    § 3-101

et seq., shall pay to the city an annual license fee of fifty dollars ($50.00).
(Ord. No. 15-87, § 8-72(l), 9-28-87)

### Sec. 3-84. Special retail liquor license.

Each person who has obtained a special retail liquor license from the state alcoholic beverage control board under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city a license fee of one hundred dollars ($100.00) when the period of use is thirty (30) days or less. Such person shall pay a license fee of two hundred fifty dollars ($250.00) when the period of use is more than thirty (30) days. In addition to the stated license fee, each such person shall pay to the city, on or before the fifteenth day of the calendar month next succeeding each separate calendar month, for the privilege of having engaged in such business, an additional license tax of ten (10) percent of the gross receipts of all such business derived from the sale of all alcoholic beverages, except beer and table wine, received during such immediate next preceding calendar month.
(Ord. No. 15-87, § 8-72(m), 9-28-87)

### Sec. 3-85. Special events retail liquor license.

Each person who has obtained a special events retail liquor license from the state alcoholic beverage control board under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city a license fee of one hundred fifty dollars ($150.00). No such license shall be issued for a period in excess of seven (7) days. Such alcoholic beverages as are authorized by the board may be sold. All applications for special events licenses shall be filed with the director of revenue at least one hundred twenty (120) days in advance of the event for which a license is sought. In addition to the stated license fee, each such person shall pay to the city, on or before the fifteenth day of the calendar month next succeeding each separate calendar month, for the privilege of having engaged in such business, an additional license tax of ten (10) percent of the gross receipts of all such business derived from the sale of all alcoholic beverages, except beer and table wine, received during such immediate next preceding calendar month.
(Ord. No. 15-87, § 8-72(n), 9-28-87)

### Sec. 3-86. Manufacturer license.

Each person who has obtained a manufacturer license from the state alcoholic beverage control board under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of two hundred fifty dollars ($250.00).
(Ord. No. 15-87, § 8-72(o), 9-28-87)

### Sec. 3-87. Importer license.

Each person who has obtained an importer license from the state alcoholic beverage control board under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of two hundred fifty dollars ($250.00).
(Ord. No. 15-87, § 8-72(p), 9-28-87)

### Sec. 3-88. Liquor wholesale license.

Each person who has obtained a liquor wholesale license from the state alcoholic beverage control board under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of five hundred dollars ($500.00).
(Ord. No. 15-87, § 8-72(q), 9-28-87)

### Secs. 3-89—3-100. Reserved.

#### DIVISION 4. TAXES

### Sec. 3-101. Levied.

There is hereby levied, in addition to all other taxes of every kind imposed by law, and shall be collected as provided in this division, a privilege or license tax against the person on account of the business activities as follows:

(1) Upon every person, firm and corporation engaged in the business of selling whiskey, wine or liquor at retail there is hereby levied an additional privilege or license tax of ten (10) percent of the gross receipts of all such business derived from the sale of all alcoholic beverages, except beer and table wine.

(2) Taxes on the sale of beer and malt beverages shall be made in accordance with Tit. 28, Ch. 3, Art. 5B (§ 28-3-190 et seq.), Excise Tax on Beer, of the Code of Alabama 1975, as amended.

(3) Taxes on the sale of table wine are taxed under the Alabama Table Wine Act (Code of Ala. 1975, § 28-7-1 et seq.) and shall be deducted from the amount considered gross receipts considered under this section.
(Ord. No. 15-87, § 8-73, 9-28-87)

## Sec. 3-102. Reports and payments; delinquency penalty.

(a) The tax levied under provisions of this division shall be due and payable in monthly installments on or before the fifteenth day of the month next succeeding the month in which sales are made. On or before the fifteenth day of each month after the tax provided in this division shall take effect, every person, firm or corporation upon whom the tax is levied shall render to the city, on a form prescribed by the city, a true and correct statement showing the gross receipts of whiskey, wine or liquors, and the like sold during the preceding month, which report shall accompany payments of the tax levied in this division.

(b) The city shall receive a purchasing statement from the state alcoholic beverage control store the first of each month. Each licensee shall have until the fifteenth of the month to pay these taxes.

(c) The tax imposed by this division shall be paid by each retail beer dealer to the wholesale dealer from whom the retail dealer purchases or otherwise acquires his retail stock, at the rates fixed, on or before the fifteenth day of the month next succeeding the date of purchase by the retailer.

(d) Any person who fails to pay the tax levied in this division within the time prescribed shall pay, in addition to the tax, a penalty of ten (10) percent of the amount of tax, together with the interest thereon, at the rate of one and one-half (1½) percent per month or fraction thereof, from the date on which the tax levied in this division became payable, such penalty and interest to be assessed and collected as part of the tax.
(Ord. No. 15-87, § 8-74, 9-28-87)

## Sec. 3-103. Collection from purchasers.

All persons subject to the provisions of the tax levied under this division shall add the tax to the sales price of the whiskey, wine or liquor sold, and collect the tax from the purchasers.
(Ord. No. 15-87, § 8-75, 9-28-87)

## Sec. 3-104. Records.

All persons subject to provisions of the tax levied under this division shall keep and preserve for a period of three (3) years all invoices, sales slips or evidences received from or issued by the state alcoholic beverage control store or agency from which purchases are made, which will be subject to examination at all reasonable times by authorized representatives of the city.
(Ord. No. 15-87, § 8-76, 9-28-87)

## Secs. 3-105—3-115. Reserved.

## DIVISION 5. SEXUAL CONDUCT; NUDITY

## Sec. 3-116. Definitions.

The following words, terms and phrases, when used in this division, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

*Establishment dealing in alcoholic beverages* means any business establishment operating within the corporate limits of the city which sells, dispenses or allows the consumption of alcoholic beverages on the premises.

*Person* means any individual, firm, association, joint venture, partnership, estate, trust, business trust, syndicate, fiduciary, corporation, or any combination thereof, or other entity.

*Vulgar, distasteful or immoral act* means any act performed for the purpose of arousing the sexual desires or attitudes of patrons, employees, owners or operators.
(Ord. No. 15-87, §§ 8-90, 8-91, 9-28-87)

## Sec. 3-117. Purpose of division.

The purpose of this division is to prohibit sexual conduct and nudity in establishments dealing in alcoholic beverages and prohibit persons owning, maintaining or operating such establishments from permitting any such prohibited activity.
(Ord. No. 15-87, § 8-89, 9-28-87)

ALCOHOLIC BEVERAGES                                                    § 3-133

**Sec. 3-118. Prohibited acts.**

(a) No person shall expose to public view his or her genitals, pubic area, vulva, anus, anal cleft or cleavage or any simulation thereof in an establishment dealing in alcoholic beverages.

(b) No person shall expose to public view any portion of their breasts below the top of the areola or any simulation thereof in an establishment dealing in alcoholic beverages.

(c) No person maintaining, owning or operating an establishment dealing in alcoholic beverages shall suffer or permit any person to expose to public view his or her genitals, pubic area, vulva, anus, anal cleft or cleavage or simulation thereof in an establishment dealing in alcoholic beverages.

(d) No person maintaining, owning or operating an establishment dealing in alcoholic beverages shall suffer, or permit any person to expose to public view any portion of their breasts below the top of the areola or any simulation thereof in an establishment dealing in alcoholic beverages.

(e) No person shall engage in and no person maintaining, owning or operating an establishment dealing in alcoholic beverages shall suffer or permit any person to engage in any sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, any sexual act which is prohibited by law, touching, caressing or fondling of the breasts, buttocks, anus or genitals or the simulation thereof within an establishment dealing in alcoholic beverages.

(f) No person maintaining, owning or operating an establishment dealing in alcoholic beverages shall allow any sexual demonstration, entertainment, exposition or contest, to include wet shirt, or any other vulgar, distasteful or immoral act on the premises.

(g) No licensee shall permit the showing of films, still pictures, electronic reproductions or other visual reproductions depicting any of the acts prohibited by this section, or any such acts which are prohibited by law.
(Ord. No. 15-87, § 8-91, 9-28-87)

**Secs. 3-119—3-130. Reserved.**

DIVISION 6. VIOLATIONS

**Sec. 3-131. Failure to pay license tax.**

It shall be unlawful for any person who is required to pay the license or privilege tax provided for in this division to fail to pay the tax at the time specified in this division, and such offense shall be a continuing offense against the city and each day during which the person shall sell or store such beverages in the city during such default shall constitute a separate offense.
(Ord. No. 15-87, § 8-83, 9-28-87)

**Sec. 3-132. Sale of unstamped beer.**

It shall be unlawful for any retail beer dealer to have, hold, possess, sell or offer for sale within the corporate limits of the city any beer, the container of which does not have securely affixed thereto decal stamps of the nature and in the amount as provided and required by law.
(Ord. No. 15-87, § 8-84, 9-28-87)

**Sec. 3-133. Delivery of unstamped beer.**

It shall be unlawful for any wholesale beer dealer to ship or deliver, directly or otherwise, any beer to or within the corporate limits of the city which does not have securely affixed to each container thereof as provided and required by law the decal stamps issued therefor.
(Ord. No. 15-87, § 8-85, 9-28-87)

[The next page is 175]

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

SILVER STEER, INC., d/b/a Zona Rosa    )
Nightclub,                            )
                                      )
      Petitioner                  )
                                      )
v.                                    )    Civil Action No.: 2:08cv136-MEF
                                      )
THE CITY OF CLANTON,                  )
ALABAMA,                              )
                                      )
      Respondent.                 )

---

**CERTIFICATE OF COUNSEL TO DISPENSE WITH NOTICE REQUIREMENT FOR
TEMPORARY RESTRAINING ORDER**

---

I, Kenneth Joe Wilson, Jr., am one of the attorneys for Plaintiff Silver Steer, Inc. I make this certification pursuant to Rule 65(b)(2) of the Federal Rules of Civil Procedure:

1.    I am an attorney at law duly licensed to practice in the State of Alabama and a member of the bar of this Court.

2.    For the reasons stated in the verified Complaint for Injunctive Relief and the Motion for Temporary Restraining Order, irreparable injury would occur to the Plaintiff if the Plaintiff were required to give notice of its request for a restraining order.

3.    Extraordinary circumstances justify a temporary restraining order without notice to the defendant. Specifically, counsel for Plaintiff has previously attempted to give notice of Plaintiff's claims against the City. Plaintiff's counsel left a detailed voice message for the City attorney on January 23, 2008, requesting that the City attorney contact Plaintiff's counsel to discuss the revocation of Plaintiff's "club license" and the reasons therefore.

4.      On January 24, 2008, Plaintiff's counsel traveled from Birmingham to the City of Clanton to obtain copies of the City's Alcoholic Beverage Ordinance and the minutes from the January 14, 2008 council meeting wherein Plaintiff's "club license" was revoked."   While in Clanton, Plaintiff's counsel called the City attorney's office numerous times that afternoon.  Again, the purpose in doing so was to discuss the revocation of Plaintiff's "club license" and the reasons therefore. After leaving additional voice mail, Plaintiff's counsel explained the nature of the call to the City attorney's receptionist and was told that the City attorney was not available to discuss the matter.  Plaintiff's counsel offered to remain on hold or to call back at such time as the City attorney became available. Plaintiff's counsel also offered to meet with the City attorney in person to discuss the matter.  In response to said requests, Plaintiff's counsel was repeatedly told that the City attorney was not available, would not be available, and was "too busy" to meet with Plaintiff's counsel or discuss the matter with Plaintiff's counsel.

5.      Subsequently, Plaintiff's counsel has made a formal written request upon the City that the City provide Plaintiff with the basis for its decision to revoke the "club license" and all lawful authority upon which the decision was based.  See January 24, 2008, letter from Plaintiff's council to council for the City of Clanton attached hereto as Exhibit "A."

6.      Subsequent thereto, Plaintiff filed a Petition for Judicial Review of an ABC Board commission decision in the Circuit Court of Montgomery County.  As a defense to said action, the ABC Board asserted [inter alia] as follows:

> 5. That on or about January 15, 2008, the ABC Board received a letter from the City of Clanton, Alabama, advising that the Clanton City Council had revoked the business license for the Silver Steer, Inc., Clanton location (the Zona Rosa) at its regular meeting on January 14, 2008 . . .

> 6. *That pursuant to ABC Rules & Regulations Number 20-X-5-.09(2), a business operation that has lost its general business license or has otherwise been forced to cease operations must surrender its ABC License.*

> 7. *That without a business license from the City of Clanton the Petitioner has no right to operate and thus has no right to hold an ABC License.*

> 8. *That to conduct the Judicial Review sought herein will be a waste of the Court's time and resources unless and until the petitioner has acquired a general retail business license.*

7.     In response thereto, Plaintiff attempted to amend its Petition for Judicial Review to add the City as a party to the Circuit Court proceeding.[1] Despite being served with the Amended Complaint and notice of a hearing on Preliminary Injunction relating thereto, the City failed to make an appearance in the Circuit Court case and failed to attend the hearing on Preliminary Injunction on February 12, 2008, before the Honorable Charles Price.

8.     In summary, that despite the efforts made by the Plaintiff by and through its attorney of record to give the City notice of its claims and the reasons supporting the claims, the City has failed and/or refused to respond in any way to Plaintiff's requests for an explanation as to why its "club license" was revoked or to Plaintiff's counsel's attempts to give notice of Plaintiff's claims to the City attorney, and has essentially ignored the same.

9.     Pursuant to Rule 65(b), Plaintiff requests that its request for a temporary restraining order be heard *ex parte*.

I state under penalty of perjury that all of the facts set out in this certificate are true and

---

[1]The referenced Circuit Court proceeding was subsequently stayed and remanded to the ABC Board for further administrative proceedings.

correct to the best of my personal knowledge.

KENNETH JOE WILSON, JR.

STATE OF ALABAMA              )

COUNTY OF JEFFERSON           )

Sworn and subscribed before me this the 15th day of _February_____ , 2008.

_____

Notary Public

My commission expires:


MY COMMISSION EXPIRES
ON 05/24/08

```
Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602004029
Cashier ID: cstrecke
Transaction Date: 02/26/2008
Payer Name: WARD AND WILSON LLC
------------------------------------
CIVIL FILING FEE
 For: WARD AND WILSON LLC
 Case/Party: D-ALM-2-08-CV-000136-001
 Amount:        $350.00
------------------------------------
CHECK
 Remitter: WARD AND WILSON LLC
 Check/Money Order Num: 4746
 Amt Tendered:  $350.00
------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00

DALM208CV000136-F

SILVER STEER V THE CITY OF CLANTON
```