IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SILVER STEER, INC., d/b/a Zona Rosa Nightclub, | ) ) |
| | ) |
| Petitioner | ) |
| | ) |
| v. | )    Civil Action No.:2:08CV136-MEF |
| | ) |
| THE CITY OF CLANTON, ALABAMA, | ) ) |
| | ) |
| Respondent. | ) |

### RESPONSE TO DEFENDANT'S MOTION TO DISMISS

COMES NOW the Plaintiff and pursuant to this Court's February 28, 2008 Order responds to Defendant's Motion to Dismiss as follows:

1.     Plaintiff adopts its previously filed Complaint for Injunctive Relief as if fully set forth herein.

2.     Defendant, City of Clanton, Alabama (herein the "City") is an incorporated municipality located within Chilton County, Alabama.

3.     This matter involves the City's Alcoholic Beverages Ordinance (herein the "Ordinance") as codified in the Clanton Code, Sections 3-26 through 3-133. A copy of the Ordinance is attached hereto as Exhibit "A." It is noted for the Court that while the provisions of the Ordinance apply to the sale of alcohol, the provisions of the Ordinance at issue in this case are separate and distinct from the State law provisions governing the sale of intoxicating liquors found at Title 28 of the Code of Alabama. See Ordinance at Sec. 3-28. As the Court is aware,

1

Plaintiff's status as a licensee under the Alabama Alcoholic Beverage Control Act and the rules and regulations relating thereto are part of a separate proceeding and not before this Court.

4.   The Ordinance provides that no person shall engage in business as a retailer of malt or brewed beverages in the corporate city limits without first having obtained from the City a license to do such business.  See Ordinance at Sec. 3-56(c).   With regard to the issuance of a license, the Ordinance further provides that:

> *Such license shall be issued by the city clerk, and shall first be approved by the city council at a regular meeting thereof before the license shall be valid.  Such license shall be renewed on October 1 of each year thereafter.*

See Ordinance at Sec. 3-56(c).

5.   Moreover, the Ordinance provides that it is the City Clerk's duty and responsibility to inform the chief of police of delinquent privilege taxes and licenses under the Ordinance.  See Ordinance at Sec. 3-33.

6.   The Ordinance provides for a variety of licensing sub-categories, including beer wholesaler, wine wholesaler, beer and wine wholesaler, warehouse license, club retail liquor license, lounge retail liquor license, retail license for off-premises consumption, restaurant retail liquor license, retail table wine license for off premises and on premises consumption, and retail beer license for on premises or off premises consumption or off premises consumption only. See Ordinance at Sec. 3-72 through 3-83.

7.   Plaintiff is a "Class II Private Club" as that term is defined at Sec. 3-26 of the Ordinance.   During the 2006 and 2007 calendar years, Plaintiff held multiple licenses issued by the City.  Copies of said licenses are attached hereto as Exhibits "B" and "C."  Plaintiff's liquor

license issued by the City is classified as a "Class II Club Liquor" (herein the "Club License"). See City of Clanton Alcoholic Beverage License No. 058 attached hereto as Exhibit "C."

8.     The fee for obtaining the Club License was $1,500.00, which, according to the Club License, Plaintiff paid on November 1, 2006. Plaintiff additionally paid a $225.00 penalty at the time the license was issued.

9.     Furthermore, the Club License purports on its face to expire on September 30, 2007.

6.     During the time period from September 2007 through January 2007, Plaintiff made multiple attempts to obtain a Class II Club Liquor license for the 2007 – 2008 Calendar years. On each such occasion, the City refused to issue the requested license or accept Plaintiff's payment therefore. No explanation was offered as to why the City would not issue the license. See Affidavit of Anwar Sultan attached hereto as Exhibit "D."

7.     During this same period of time, Plaintiff obtained and held a "club liquor – class II" license from the State ABC Board (herein the "State License"). A copy of the 2006 – 2007 State License is attached hereto as an exhibit. Like the City's Club License, the State License purportedly expired on September 30, 2007. On or before the expiration date, Plaintiff obtained a 2007 – 2008 State License. However, due to the installation of a new data storage and printing system by the State ABC License Division, none of the ABC Board's licensees received their 2008 license certificates at the usual time during the Fall of 2007, and in fact Plaintiff's ABC Board license was not received until February 2008. See January 11, 2008 letter from Robert Martin, counsel for the ABC Board, to Bill Denson, previous counsel for Plaintiff attached hereto as Exhibit "E."

8.      However, while Plaintiff did not have a license "certificate" in its possession, the Zona Rosa was considered to be licensed at all such times as Plaintiff attempted to obtain its City Club License as set forth above and is in fact currently considered to be licensed by the ABC Board as a Club Liquor Licensee (Type 032) for the 2008 – 2009 license year.

9.      In fact, on or about February 28, 2008, after receiving its current ABC Board license certificate, Plaintiff once again attempted to obtain a current City Club License by appearing at the City Clerk's office and personally requesting the same from the City Clerk and offering to tender the necessary fee.  Plaintiff made a copy of its ABC Board license certificate available for the City's review at that time.  Nevertheless, the City refused to issue a license to Plaintiff or accept Plaintiff's payment therefore.  See Affidavit of Anwar Sultan attached hereto as Exhibit "F."

10.     Meanwhile, as set forth more fully in Plaintiff's Complaint for Injunctive Relief, on or about January 15, 2008, Plaintiff became aware of certain actions taken by the Clanton City Council in connection with its Club License.  Specifically, Plaintiff, by and through its agent Anwar Sultan, became aware of a newspaper article in the Clanton Advertiser wherein it was reported that "Clanton's City Council last night passed a motion that ordered City Clerk Debbie Orange to not sell a club license to Silver Steer, operating as Zona Rosa.  The motion passed unanimously."  See January 15, 2008 article from the Clanton Advertiser attached hereto as Exhibit "G."

11.     As the Court is aware, the City during the course of oral arguments has taken the position in the instant case that the referenced newspaper article is a true and accurate reflection of what took place at the January 14, 2008 Council Meeting and is in fact more accurate in this

regard than the actual council minutes.  Plaintiff is intrigued by the City's logic to say the least.

First of all, Plaintiff is at a loss as to how the City Council can pass a motion *not to issue a license* when according to the City's own attorneys, "***The Plaintiff did not file any request for a liquor license on or after September 30, 2007.***"  See the City's Motion to Dismiss at paragraph 2, B., page 6.

12.    There are only two possible explanations for this discrepancy.  The first explanation is that the City passed a meaningless motion, ordering its City Clerk **_not_** to issue a license to a business that had **_not_** requested a license.  The second, and far more plausible explanation, is that the Plaintiff did make attempts to renew its license as set forth in the attached Affidavit of Anwar Sultan, and that Plaintiff was stalemated and stonewalled by the City in those efforts until such time as the City for some five (5) months until it finally took official action on January 14, 2008.

13.    As the Court is also aware, the position taken by the City that the Plaintiff's license was never revoked is plainly inconsistent with the City's own records.  Again, the minutes from the January 14, 2008 council meeting read as follows:

> *COUNCILMEMBER SMITH MADE THE MOTION TO **REVOKE** THE CLUB LICENSE FOR SILVER STEER, INC. DOING BUSINESS AS ZONA ROSA DUE TO NUMEROUS VIOLATIONS OF THE CITY'S RULES FOR OPERATING A CLUB. THE MOTION WAS SECONDED BY COUNCILMEMBER HILL, VOTE IN FAVOR WAS UNANIMOUS.*

See Council Minutes attached hereto as an Exhibit "H."  First of all, it should be noted that the council minutes make absolutely no reference whatsoever to Plaintiff's Club License being "expired."  Indeed, the question is begged: why should it be necessary for the council to discuss

5

the "numerous violations" committed by Plaintiff when no application for a new license had ever been made?

Of course, the City now notably takes the position that its own minutes, which were not made available to the Plaintiff's counsel by order of Mayor Driver until January 29, 2008, the delay being so that the minutes could be properly approved and attested to, are inaccurate.

14.    Moreover, on January 15, 2008, the City corresponded in writing with the ABC Board, stating that "the city council ***revoked*** the club license for Silver Steer, doing business as Zona Rosa at its regular meeting of January 14, 2008."[1]   Strangely, the City has offered no explanation to this point as to the City Clerk's use of the term "revoked" in this instance. Plaintiff can only assume that, once again, the newspaper reporter is more reliable from the City Clerk.

15.    But whether the City "revoked" the Plaintiff's Club License or simply passed legislation not to renew or issue the license, this matter is still before the Court on whether there has been a violation of Plaintiff's constitutional rights under the Due Process Clause.

16.    In this regard, there exists a myriad of reasons that a City can deny and/or revoke a liquor license.  See Phillips v. City of Citronelle, 961 So. 2d 827 (Ala.Civ.App. 2007)(evidence presented *at public hearing with applicant present* of some 33 complaints had been filed for things such as illegal firearm possession, cruelty to animals, assault, noise violations, public intoxication, theft, marijuana possession, reckless endangerment and murder); Phase II, LLC v.

---

[1] It is noted for the Court that the subject City Council meeting took place some seven (7) days after a hearing that was conducted by an ABC Board hearing commission regarding thje status of Plaintiff's State ABC Board License.  However, it must be remembered that the actions taken by the ABC Board pursuant to said hearing were not referenced in the council minutes as a basis for the "revocation" of Plaintiff's City Club License.

6

City of Huntsville, 952 So. 2d 1115 (Ala. 2006)(evidence presented *at public hearing* regarding increased burden on police force and increased traffic and neighborhood safety);   Crump v. Etowah County, 541 So. 2d 14 (Ala. 1989)(evidence of sale of beer to minors and owner's prior arrest for violating prohibition law in Dekalb County); Maddox v. Madison County Commission, 661 So. 2d 224 (Ala. 1995)(evidence *at hearing before county commission* that applicant's location was in an area that was not "predominantly commercial" and was therefore violative of local ordinance);   Hamilton v. The Town of Vincent, 468 So. 2d 145 (Ala. 1985)(evidence *at town council meeting where applicant was present* that applicant's location was within ½ mile of residential area and baseball field within 150 feet); Black v. Pike County Commission, 375 So. 2d 255 (Ala. 1979)(evidence presented at county commission meeting of petition signed by citizens opposed to license).

17.    It should be noted that in each of the referenced cases the applicant / licensee was afforded prior notice and/or a public hearing and an opportunity to be heard before the license was revoked and/or denied.  In fact, in the aforementioned Hamilton case, the Alabama Supreme Court specifically noted that "***the Hamiltons were unfettered in their opportunity to present witnesses and reasons in favor of the license they sought.***" Hamilton v. The Town of Vincent, 468 So. 2d at 147 (emphasis supplied).  Similarly, in the referenced Black case, the Alabama Supreme Court noted that the applicant was "***informed of the date of the Commission meeting at which her application would be acted upon.***" Black v. Pike County Commission, 375 So. 2d at 256.

18.    Moreover, the City's own Alcoholic Beverages Ordinance includes certain criteria

that the City may consider in reviewing an *"initial application"* for a license thereunder.[2] Those reasons include: (1) the wishes and desires of the residents, real property owners and businesses within 500 feet of the property; (2) the character and reputation of the applicant and others associated therewith; (3) the criminal court records of the applicant and others associated therewith; (4) the location of the premises and the number of establishments presently holding similar licenses within 500 feet; and (5) the compliance by the applicant and others associated therewith with the laws of the state and ordinances of the City. See Ordinance at Sec. 3-57(d)(1) – (5).

19.    However, the City's own records are utterly devoid of any such reason and in fact no such reason has been offered or otherwise cited as an explanation for why the City revoked and/or refused to issue and/or renew Plaintiff's Club License.

20.    So again, while the City might have hung its proverbial hat on any number of valid reasons for "revoking" or refusing to issue and/or renew the Club License, it has failed to do so. It is to this end that the City's actions are constitutionally impermissible.

21.    Furthermore, while Plaintiff recognizes that a liquor license may be a privilege as opposed to a right, "[m]erely calling a liquor license a privilege does not free the municipal authorities from the due process requirements in licensing and allow them to exercise uncontrolled discretion." Hornsby v. Allen, 326 F. 2d 605 (5th Circ. 1964). As stated by the Hornsby Court:

> *Neither is the assertion that liquor may be a menace to public health and welfare a sufficient answer to Mrs. Hornsby's allegations. The potential social undesirability of the product may warrant absolutely prohibiting it, or, as the Aldermanic Board has done to*

---

[2] Plaintiff does not concede that the criteria for an "initial application" apply in the instant case but instead simply offer this information for the Court's consideration.

8

*some extent here, imposing restrictions to protect the community from its harmful influences. **But the dangers do not justify depriving those who deal in liquor, or seek to deal in it, of the customary constitutional safeguards.** Indeed, the great social interest in the liquor industry makes an exceptionally strong case for adherence to proper procedures and access to judicial review in licensing the retail sale of liquor. **The possibility of high profits on the one hand and the danger of strict governmental limitations on the other hand create a fertile breeding ground for the temptations of graft, corruption, and other abuses of governmental office. If one applicant for a license is preferred over another equally qualified as a political favor or as the result of a clandestine arrangement, the disappointed applicant is injured, but the injury to the public is much greater.  <u>The public has the right to expect its officers to observe prescribed standards and to make adjudications on the basis of merit. The first step toward insuring that these expectations are realized is to require adherence to the standards of due process; absolute and uncontrolled discretion invites abuse</u>**. See* <u>Francis v. Fitzpatrick</u>, *129 Conn. 619, 30 A.2d 552, 145 A.L.R. 505;* <u>Glicker v. Michigan Liquor Control Commission</u>, *160 F.2d 96 (6th Cir. 1947);* <u>Hornsby v. Allen</u>, *326 F.2d 605, 610 (5th Cir. 1964)(emphasis supplied).*

22.    As set forth more fully in Plaintiff's Complaint for Injunctive Relief, Plaintiff received absolutely no prior notice of the City's intent to revoke or deny the issuance of its Club License.  In fact, Plaintiff received no official notice of the City's actions prior or subsequent to the January 14, 2008 council meeting, again, only learning of the licensing decision by virtue of a newspaper article.

23.    In fact, as of the date this brief is filed the only evidence before the Court relating to this issue is the council minutes now denounced by the City, the City Clerk's January 15, 2008 letter to the ABC Board, and the Clanton Advertiser Article, none of which provide any detailed explanation as to why the license was revoked or not issued.

24.    Of these three items, only the council minutes provide anything remotely approaching an explanation by stating that the license was revoked "*DUE TO NUMEROUS VIOLATIONS OF THE CITY'S RULES FOR OPERATING A CLUB.*"

25.    This language deserves a closer examination.  To Plaintiff's knowledge, **Zona**

**Rosa has been cited for violating a grand total of three (2) City ordinances during the**

**entirety of its existence.** *Two of the violations occurred on January 20, 2007, approximately*

*one (1) year prior to the City "revoking" and/or refusing to issue and/or renew Plaintiff's*

*Club License.*  The citations in question involved (a) violation of the City's noise ordinance (See

Uniform Non-Traffic Citation and Complaint No. 3076 attached hereto as Exhibit "I"), and (b)

violation of the City's rules and regulations regarding operating pool tables (See Uniform Non-

Traffic Citation and Complaint No. 3075 attached hereto as Exhibit "J").  The third violation was

also a noise ordinance violation, and it was issued on March 17, 2007 (See Uniform Non-Traffic

Citation and Complaint No. 2894), some ten (10) months prior to the January 14, 2008 council

meeting.

26.    According to Plaintiff's reading and interpretation of the City's Alcoholic

Beverage Control Ordinance, none of these three violations have any connection to "the City's

rules for operating a club."  The definitions for the types of "private clubs" authorized by the

Ordinance are found at Sec. 3-26, and nowhere within those definitions is there any mention of

noise restrictions or the use of pool tables. Also, fees and taxes applicable to private clubs are

explained and defined at Sec. 3-76 of the Ordinance.  Again, nowhere within that provision is

there any mention of noise restrictions or the use of pool tables.

27.    Plaintiff is unaware as to whether these violations constitute the "numerous

violations" referred to in the council minutes.  Again, the City did not see fit to give Plaintiff

notice of its intent to revoke and/or refuse to issue and/or renew the Club License and certainly

has not provided any explanation whatsoever as to its decision in the two (2) months since the

hearing.  However, to the extent these two violations are the "numerous violations" referred to in the council minutes and the basis for the City's licensing decision, the City's actions (1) categorizing these citations as violations of "the City's rules for operating a club" when clearly they are not, and (2) revoking and/or refusing to issue and/or renew the license based on these isolated occurrences and without prior notice and an opportunity to be heard are clearly arbitrary and capricious and constitutionally impermissible.

28.    In fact, there has been no showing by the City that the Plaintiff has conducted its business operations in such  a way as to pose a threat to the public welfare, health, peace and morals of the people of the City.  See Ordinance at Sec. 3-27.  There has been no showing that the Plaintiff has conducted its business in any way that is inconsistent with or violative the provisions of Section 3-57(d)(1) – (5) of the Ordiance (should the Court determine that said criteria apply to the instant case). There has been no showing that the Plaintiff has conducted its business similarly to those applicants whose licenses were denied in the cited cases such as Phillips v. City of Citronelle, Phase II, LLC v. City of Huntsville, Crump v. Etowah County, Maddox v. Madison County Commission, and Hamilton v. The Town of Vincent.

29.    And again, any claim that the Plaintiff's Club License was "revoked" or not issued because of the absence of proper ABC Board certification is utterly disingenuous insofar as Plaintiff now possesses its ABC Board certification and furthermore was properly licensed by the ABC Board throughout 2007 when Plaintiff attempted to obtain its current City Club License.

30.    At a minimum, the Plaintiff has stated a claim for which relief can be granted such that a Motion to Dismiss pursuant to Rule 12 must be denied.

31.    Whether the City "revoked" the Club License or simply voted not to issue and/or

renew the license is not necessarily the point.  Contrary to the allegations of the City's Motion to Dismiss, the City has indeed "taken action against the Plaintiff," and the manner in which the determination was made was and is not in accordance with constitutional standards of due process and equal protection.  The revocation of Plaintiff's license did not meet applicable constitutional standards and, since done under color of state statute, constitute a violation of 42 U.S.C. § 1983.  Covin v. Alabama Board of Examiners in Counseling, 712 So. 2d 1103 (Ala.Civ.App. 1999); Ex Parte Alabama Board of Examiners in Counseling, et al., 796 So. 2d 355 (Ala. 2000).

32.    Plaintiff has been aggrieved by the City's revocation of Plaintiff's Club License in that said decision deprives Plaintiff of life, liberty or property without due process of law; was unjust, arbitrary, capricious and unreasonable; conclusory; not supported by substantial evidence; was or is characterized by an abuse of discretion or a clearly unwarranted exercise of discretion; was deficient in that the City acted beyond the power conferred upon it by law and the decision did not comply with applicable statutory requirements.  In this regard, the City's decision has wrongfully frustrated Petitioner's ability to lawfully operate its business and prohibited the same.

33.    There is no question but that the City is without the authority to arbitrarily revoke the Plaintiff's club license or otherwise suspend Plaintiff's due process rights in connection with a license revocation.  See Constitution of the United States, Amendment XIV; Alabama Const. Art. I, § 13; Sanders v. City of Dothan, 642 So. 2d 437 (ala. 1994); O'Bar v. Town of Rainbow City,  269 Ala. 247; 112 So. 2d 790 (Ala. 1959);  Cavu Club v. City of Birmingham, Ala., 110 So.2d 307; City of Birmingham v. Bollas, 209 Ala. 512, 96 So. 591; Richardson v. Reese, 165 Tenn. 661, 57 S.W.2d 797; Friedland v. Ingersoll, 249 App.Div. 623, 291 N.Y.S. 32; 33 Am.Jur.,

Licenses, § 65; 53 C.J.S. Licenses § 42; 18 Ala.Lawyer 132, 137; 3 McQuillin, Mun.Corp., 2d Ed., 1108.

34.    The conduct of the City and the actions and decisions set forth more fully hereinabove were undertaken with malice and in bad faith.

35.    In this regard, it is noted for the Court that the manager and operator of the Zona Rosa, Anwar Sultan, is a Pakastani national, and that the Zona Rosa is a club that caters to the Latino population of the City of Clanton and the surrounding area.    See Affidavit of Anwar Sultan attached hereto as Exhibit "F." It is alleged herein that other non-Latino clubs and/or clubs that are managed and operated by non-Pakastani's that are similarly situated to Plaintiff have been issued their licenses by the City under the City Alcoholic Beverage Control Ordinance.

WHEREFORE, Plaintiff prays the overrule the City's Motion to Dismiss this matter.

Respectfully submitted,

/s/ Kenneth Joe Wilson, Jr.
JAMES S. WARD
KENNETH JOE WILSON, JR.
Attorney for Plaintiff
WARD & WILSON, L.L.C.
2100 Southbridge Parkway, Suite 580

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on the following via electronic mail and by filing the same with the Court's ECF system this the 10th day of March, 2008.

James Porter
Porter, Porter and Hassinger
Suite 1000, 215 21st Street North
Birmingham, AL  35201

/s/ Kenneth Joe Wilson, Jr.

Of Counsel

## ARTICLE I. IN GENERAL

### Secs. 3-1—3-25. Reserved.

## ARTICLE II. WHOLESALE AND RETAIL SALES

### DIVISION 1. GENERALLY

### Sec. 3-26. Definitions.

The following words, terms and phrases, when used in this article, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

*Alcoholic beverage* means any alcoholic, spirituous, vinous, fermented or other alcoholic beverage, or combination of liquors and mixed liquor, a part of which is spirituous, vinous, fermented or otherwise alcoholic, and all drinks or drinkable liquids, preparations or mixtures intended for beverage purposes, which contain one-half of one percent or more of alcohol by volume, and shall include liquor, beer and wine, both fortified and table wine.

*Association* means a partnership, limited partnership, or any form of unincorporated enterprise owned by two (2) or more persons.

*Class I lounge* means any place or premises operated by a responsible person of good reputation in which alcoholic beverages of all types may be offered for sale for on-premises consumption only, but which does not meet the requirement for a restaurant-lounge, restaurant-pub or private club lounge, and which meets the requirements of the zoning ordinance of the city (Ordinance No. 6-70, as amended), and the following additional requirements:

(1) The premises must have a lounge area of at least one thousand (1,000) square feet on one (1) floor in one (1) room, the area to be equipped with tables and chairs and capable of seating at least fifty (50) persons.

(2) A minimum of five (5) off-street parking spaces shall be provided for each one hundred (100) square feet of lounge area,

provided that this requirement shall be in addition to the parking requirements for any other uses in the same building.

*Class II lounge-package store* means a class II lounge retail liquor licensee who operates the licensed premises for the sale of all classes of alcoholic beverages for off-premises consumption only. In addition to meeting all other legal requirements, such licensee must also comply with the following additional conditions or requirements:

(1) The licensee must have a minimum of five hundred (500) square feet of floor space for the display and sales of alcoholic beverages. The square footage required in this subsection shall not include areas of the licensed premises which are not open to the patrons or general membership of the licensee and which are used for office space, storage or restroom facilities.

(2) The licensee is authorized to sell only alcoholic beverages, ice, mixers, snack items and tobacco products. The licensee shall not sell general grocery items, novelties, clothing or any other item of general merchandise.

(3) *Reserved.*

(4) *Reserved.*

(5) The licensee shall at all times when open for business have in its possession a minimum inventory of five thousand dollars ($5,000.00) wholesale value of liquor or wine. The liquor must have been produced by at least two (2) distilleries, and the wine produced by at least two (2) wineries.

(6) The licensee shall not advertise or identify its premises, prices or location by the use of a flashing or blinking sign, whether operated by electricity, gas or otherwise.

(7) No person under the age of twenty-one (21) years shall be issued such license nor shall any corporation be issued such license unless the president thereof is over the age of twenty-one (21) years.

(8) No person under twenty-one (21) years of age shall be admitted on the premises of

any class II lounge-package store as a patron or employee and it shall be unlawful for any class II lounge-package store licensee to admit any minor to the premises as a patron or employee.

*Corporation* means a corporation or joint stock association organized under the laws of this state, the United States, or any other state, territory or foreign country or dependency.

*Licensee* means any person licensed by the city council to sell liquor, wines, or malt and brewed beverages under the terms of this article.

*Liquor* means any alcoholic, spirituous, vinous, fermented or other alcoholic beverage, or combination of liquors and mixed liquor, a part of which is spirituous, fermented, vinous or otherwise alcoholic, and all drinks or drinkable liquids, preparations or mixtures intended for beverage purposes, which contain one-half of one percent or more of alcohol by volume, except beer and table wine.

*Malt or brewed beverages* means any beer, lager beer, ale, porter or similar fermented malt liquor containing one-half of one percent or more of alcohol by volume and not in excess of four (4) percent alcohol by weight and five (5) percent by volume, by whatever name the beverage may be called.

*Meal* means a diversified selection of food, some of which is not susceptible of being consumed in the absence of at least some articles of tableware, and which cannot be conveniently consumed while one is standing or walking about.

*Person* means a natural person, association or corporation. Whenever used in a clause prescribing or imposing a fine or imprisonment, or both, such terms as applied to an association shall mean the partners or members thereof and as applied to a corporation shall mean the officers thereof, except as to private clubs the term "person" shall mean such individual who, under the bylaws of such club, has jurisdiction over the possession and sale of liquor therein.

*Private club.*

(1)  *Class I private club* means a corporation or association organized or formed in good

faith by authority of law and which must have at least one hundred fifty (150) paid-up members. It must be the owner, lessee or occupant of an establishment operated solely for objects of a national, social, patriotic, political or athletic nature or the like, but not for pecuniary gain, as evidenced by Internal Revenue Service Qualified Exemption Status, and the property as well as the advantages of which belong to all the members and which maintains an establishment provided with special space and accommodations where, in consideration of payment, food, with or without lodging, is habitually served. The club shall hold regular meetings, continue its business through officers regularly elected, admit members by written application only and with a five-day waiting period, investigation and ballot, and charge and collect dues from elected members. The licensee may offer for sale all classes of alcoholic beverages for on-premises consumption.

(2)  *Class II private club* means a corporation or association organized or formed in good faith by authority of law and which must have at least one hundred (100) paid-up members. It must be the owner, lessee or occupant of an establishment operated solely for objects of a national, social, patriotic, political or athletic nature or the like. The club shall hold regular meetings, continue its business through officers regularly elected, admit members by written application only and with a five-day waiting period, investigation and ballot, and charge and collect dues from elected members. The licensee may offer for sale all classes of alcoholic beverages for on-premises consumption.

*Restaurant-lounge* means any place or premises in which food, refreshments and liquor are offered for consumption within the building in which the establishment is located, which is operated by a responsible person of good reputation and which meets the requirements of the zoning ordinance (Ordinance No. 6-70, as amended), and the following additional requirements:

(1)  The combined dining and kitchen areas shall total at least one thousand (1,000)



square feet on one (1) floor. The dining area shall be equipped with tables and chairs accommodating at least fifty (50) persons at one (1) time. Storage areas shall not be considered in meeting square footage requirements.

(2)  The premises shall have a kitchen separate and apart from the dining area, but adjoining the dining area, in which food is prepared for consumption by the public and in which the food or meals served in the dining area are prepared.

(3)  At least one (1) meal per day shall be served at least six (6) days a week, with the exception of holidays, vacations and periods of redecorating.

(4)  Such place shall be duly licensed by the state alcoholic beverage control board for the sale of liquor for on-premises consumption.

(5)  The serving of such food or meals shall constitute the principal business of such establishment, with the serving of liquor, malt or brewed beverages, wines or other alcoholic beverages being only an incidental part of the business. During any ninety-day period, the gross receipts from the serving of meals and food shall constitute more than sixty (60) percent of the gross receipts of the business.

*Restaurant-pub* means any place or premises in which foods, refreshments, and malt or brewed beverages or table wines, but not liquor, are offered for sale or consumption within the building in which the establishment is located, which is operated by a person of good reputation, and which meets the requirements of the zoning ordinance, (Ordinance No. 6-70, as amended), and the following additional requirements:

(1)  The combined dining and kitchen areas shall total at least six hundred (600) square feet on one (1) floor. The dining area shall be equipped with tables and chairs accommodating at least thirty-five (35) persons at one (1) time. Storage areas shall not be considered in meeting square footage requirements.

(2)  The premises shall have a kitchen separate and apart from the dining area, but adjoining the dining area, in which food is prepared for consumption by the public and in which the food or meals served in the dining area are prepared.

(3)  At least one (1) meal per day shall be served at least six (6) days a week, with the exception of holidays, vacations and periods of redecorating.

(4)  Such place shall be duly licensed by the state alcoholic beverage control board for the sale of malt or brewed beverages or table wines for on-premises consumption.

(5)  The serving of such food or meals shall constitute the principal business of such establishment, with the serving of malt or brewed beverages or table wines being only an incidental part of the business. During any ninety-day period, the gross receipts from the serving of meals and food shall constitute more than sixty (60) percent of the gross receipts of the business.

*Wine* means all beverages made from the fermentation of fruits, berries or grapes, with or without added spirits, and produced in accordance with the laws and regulations of the United States, containing not more than twenty-four (24) percent alcohol by volume, and shall include all sparkling wines, carbonated wines, special natural wines, rectified wines, vermouths, vinous beverages, vinous liquors, and like products, including restored or unrestored pure condensed juice.

(1)  *Fortified wine* means any wine containing more than fourteen (14) percent alcohol by volume but not more than twenty-four (24) percent.

(2)  *Table wine* means any wine containing not more than fourteen (14) percent alcohol by volume. Table wine is not liquor, spirituous or vinous.

(Ord. No. 15-87, § 8-71, 9-28-87; Ord. No. 01-02, 2-25-02)

    **State law reference**—Club liquor license, approval of municipality, Code of Ala. 1975, § 28-3A-12.

## Sec. 3-27. Purpose of article; territorial applicability.

In addition to its revenue purposes within the corporate limits, this article shall be deemed the exercise of the police power of the city for the protection of the public welfare, health, peace and morals of the people of the city, and all the provisions of this article shall be liberally construed for the accomplishment of this purpose. This article shall have application to that area within the corporate limits of the city, and none other.

(Ord. No. 15-87, § 8-66, 9-28-87)

## Sec. 3-28. Sales to which article applies.

The provisions of this article shall apply to the sale of alcoholic beverages.

(Ord. No. 15-87, § 8-69, 9-28-87)

## Sec. 3-29. Exceptions to article—Beverages stored for purpose of resale or reshipment.

This article shall not be construed to apply to any alcoholic beverages stored for the purpose of resale or reshipment outside the city and which are actually so resold or reshipped.

(Ord. No. 15-87, § 8-93, 9-28-87)

## Sec. 3-30. Same—Interstate commerce; federal agencies.

This article shall not be construed to tax interstate commerce or any business of the United States government or any branch or agency thereof.

(Ord. No. 15-87, § 8-94, 9-28-87)

## Sec. 3-31. Article cumulative.

This article shall not be construed to repeal any of the provisions of any other ordinance of the general license code of the city, but shall be held to be cumulative.

(Ord. No. 15-87, § 8-95, 9-28-87)

## Sec. 3-32. Adoption of state control board regulations.

The rules and regulations adopted and promulgated by the state alcoholic beverage control board, in effect as of May 15, 1972, and as may be adopted or amended thereafter by the beverage control board, the violation of which constitutes a misdemeanor, are hereby adopted as laws of the city.

(Ord. No. 15-87, § 8-67, 9-28-87)

## Sec. 3-33. Reporting of delinquencies.

It shall be the duty and responsibility of the city clerk's office to inform the chief of police of delinquent privilege taxes and licenses under this article.

(Ord. No. 15-87, § 8-77, 9-28-87)

## Sec. 3-34. Sale for off-premises consumption.

Except for beer and wine, no alcoholic beverages for off-premises consumption shall be sold, furnished or given away in the city by any city alcoholic beverage retail licensee or under any city alcoholic beverage retail liquor license except by a class II lounge or package store licensee under a license as provided for in this article. Nothing in this section is intended to conflict with the provisions of Code of Ala. 1975, § 28-3A-13.

(Ord. No. 15-87, § 8-71, 9-28-87)

ALCOHOLIC BEVERAGES

§ 3-41

### Sec. 3-35. Hours of sale in lounges, restaurants, etc.

All lounges, clubs, private clubs, restaurants or other places serving alcoholic beverages shall abate the sale of all whiskey, wine, beer or liquor at 2:00 a.m. These businesses may commence the sale of such beverages at 6:00 a.m., except Sunday. No sales shall be made between 2:00 a.m. Sunday and 6:00 a.m. Monday.
(Ord. No. 15-87, § 8-79, 9-28-87)

### Sec. 3-36. Bringing opened container onto licensed premises; seating of patrons.

It shall be unlawful for any person other than the licensee to bring on the premises of a licensee any bottle, can or container of alcoholic liquor or alcoholic beverage if the seal is broken. No person shall be served for on-premises consumption unless seated, and no patron shall move drinks from one table to the other.
(Ord. No. 15-87, § 8-80, 9-28-87)

### Sec. 3-37. Consumption outside licensed premises.

It shall be unlawful for any person to drink or consume alcoholic liquor or alcoholic beverages outside of the licensee's establishment, or to have in his possession any opened bottle, can or container of alcoholic beverages.
(Ord. No. 15-87, § 8-81, 9-28-87)

### Sec. 3-38. Duty to maintain order on premises; reports of assaults, affrays, etc.

It shall be the duty of each owner and of each manager or supervisor at any time charged with the management and supervision of any retail liquor, retail table wine or retail malt or brewed beverage licensed premises, while the premises are open to the public, to maintain order upon the premises and to exclude from the premises any person who is drunk and disorderly or who commits any breach of the peace, or who uses offensive, disorderly, threatening, abusive or insulting language, conduct or behavior with the intent to provoke a breach of the peace, or whereby a breach of the peace might be occasioned. It shall be the duty of each officer, owner, manager or person in charge of any retail liquor, retail table wine or retail malt or brewed beverage licensed premises within the city immediately to make an appropriate report to the police department of the city of each assault, assault and battery or affray occurring on the licensed premises while the premises are open for business. It shall further be the duty of the person to make a written report of each of the incidents to the police department of the city and to the local field office of the state alcoholic beverage control board within thirty-six (36) hours thereof.
(Ord. No. 15-87, § 8-87, 9-28-87)

### Sec. 3-39. Identification of delivery vehicles.

Each person, firm or corporation making distribution sales or deliveries of alcoholic beverages in the city shall clearly display the company markings for license identification on the side panels of each vehicle making such delivery.
(Ord. No. 15-87, § 8-97, 9-28-87)

### Sec. 3-40. Consumption by employees on licensed premises prohibited.

It shall be unlawful for any owner, operator or employee of any licensee who is engaged in the sale of alcoholic beverages to consume or allow any employee to consume any alcoholic beverage while performing work or duty on the premises of the licensee.
(Ord. No. 15-87, § 8-98, 9-28-87)

### Sec. 3-41. Purchase by, sale to minors; possession by minors; misrepresentation of age.

(a) As used in this section, the word "minor" means a person less than twenty-one (21) years of age.

(b) It shall be unlawful:

(1) For any minor person, directly or indirectly, to purchase any malt or brewed beverages, any wine, or liquor, or any alcoholic or intoxicating beverage, or to attempt to purchase any of such beverages.

(2) For any minor person to possess or to consume any alcoholic or intoxicating beverages in any public place, or in any business establishment or club.

(3) For any person to sell, furnish, give to or purchase for any minor person any of such beverages.

(4) For any person, directly or indirectly, to falsely represent or attempt to falsely represent that a minor person is not a minor or is not under twenty-one (21) years of age, and, by means of such false representation, to aid or abet or attempt to aid or abet such minor person to buy, receive or otherwise obtain, or otherwise to aid or abet such minor person to buy, receive or otherwise obtain, any malt or brewed beverage, any wine or liquor, or any alcoholic or intoxicating beverages.

(c) For the purposes of this section the definitions of malt or brewed beverages, wine or liquor, or alcoholic or intoxicating beverages, shall be the same as they are defined in the Code of Ala. 1975, tit. 28, as amended.

(d) It shall be considered a false representation that a person is not a minor, or is not under twenty-one (21) years of age, that the purchaser fails to disclose that the person making the purchase of, obtaining or securing such malt or brewed beverages, such wines or liquors, or such alcoholic or intoxicating beverages, is a minor person or has not reached the age of twenty-one (21) years.

(Ord. No. 15-87, § 8-82, 9-28-87)

**Sec. 3-42. Possession of open container or consumption in public place.**

It shall be unlawful for any person to possess open containers of alcoholic beverages or consume alcoholic or intoxicating beverages while upon or using any public street, road or highway in the city or while in or on any automobile or other motor vehicle on or along any public street, road or highway in the city, or in any public place.

(Ord. No. 15-87, § 8-86, 9-28-87; Ord. No. 16-87, 9-87)

**Sec. 3-43. Sale or consumption on public grounds.**

Any person who gives away, sells, serves or drinks any alcoholic or malt or brewed beverages in or on any city school building and grounds, recreation building, excluding any private recreation areas leased or rented to individuals or clubs for special events, city or city school playgrounds, city parks, and athletic fields is guilty of a misdemeanor, and upon conviction shall be punished as provided in this Code.

(Ord. No. 15-87, § 8-88, 9-28-87)

**Secs. 3-44—3-55. Reserved.**

DIVISION 2. LICENSE GENERALLY

**Sec. 3-56. Required; issuance; transfer.**

(a) Establishments dealing in alcoholic beverages shall mean any business establishment operating within the corporate limits of the city which sells, dispenses, or allows the consumption of alcoholic beverages on the premises.

(b) No person shall engage in any business or establishment dealing in alcoholic beverages either as a wholesaler, retailer, distributor, or jobber within the corporate limits of the city without first having obtained from the city a license to conduct such business.

(c) No person shall engage in business as a retailer of malt or brewed beverages or alcoholic beverages in the corporate limits of the city without first having obtained from the city a license to do such business. Such license shall be issued by the city clerk, and shall first be approved by the city council at a regular meeting thereof before the license shall be valid. Such license shall be renewed on October 1 of each year thereafter. No reduction or proration of the fee for the license shall be allowed on account of not commencing its business on October 1, nor shall any rebate be allowed upon revocation, suspension or surrender of such license before the expiration thereof. Licenses issued under this article may not be assigned. If fifty-one (51) percent of the ownership of a corporate licensee or partnership is sold or transferred to a person not previously an owner of

the business and licensee during the license year, such sale or transfer shall be deemed to terminate the license issued under this article, and shall require a new license to be purchased and issued for the continuation of such business. Applications for the transfer of the location of any license issued under this article shall be administered as a new license, and the written application for such transfer shall be submitted with a transfer fee of twenty-five dollars ($25.00), which shall be refunded if the transfer is denied.

(d) Wholesalers, distributors and jobbers may obtain from the city, by the purchase thereof, a city license upon the presentation of a current valid state license.

(Ord. No. 15-87, § 8-68, 9-28-87; Ord. No. 16-87, 11-9-87; Ord. No. 17-96, 11-6-96)

## Sec. 3-57. Eligibility; application; approval.

(a) *Sale for on-premises consumption.* It shall be unlawful for any person to engage in the on-premises retail sale of alcoholic beverages within the city without first obtaining a license as provided in this article. No person shall be granted a license for the sale of alcoholic beverages within the city unless such person operates a restaurant, hotel, restaurant-lounge, restaurant-pub, private club-lounge or lounge or is granted another retail license as provided in this article, unless such person is duly licensed by the state alcoholic beverage control board, unless such person is licensed to do so by the city and conforms to all the regulations provided in this article and to all regulations promulgated by the state alcoholic beverage control board, and unless such person pays all the license fees levied under this article. In addition, such person shall file written application on the form provided by the state with the city clerk prior to consideration of the application by the city council. Licenses shall be granted and issued by the city only to reputable individuals or to reputable corporations organized under the laws of the state or duly qualified thereunder to do business in the state, and then only when it appears that all officers and directors of the corporation are reputable individuals. In addition, no license shall be granted under this article if the establishment seeking such license is within the prohibited distance from any church building,

public or private school building, YMCA building or public playground. Such distance shall be set out and measured in a straight line as defined in section 3-58.

(b) *Sale of beer and wine for off-premises consumption.* No license shall be approved by the city council for the retail sale of malt and brewed beverages or wine for off-premises consumption unless the business of the licensed establishment is at least sixty (60) percent the sale of groceries, foodstuffs, gasoline and general merchandise. The retail sales of groceries, foodstuffs, gasoline and general merchandise shall constitute the principal business of the licensed establishment with the sale of malt or brewed beverages or wine being only an incidental part of the business. During any ninety-day period, the gross receipts from the sale of groceries, foodstuffs, gasoline and general merchandise shall constitute more than sixty (60) percent of the gross receipts. This subsection shall not be applicable to a class II lounge-package store or private club. In addition, no license shall be granted under this article until after the required alcoholic beverage control license shall have been duly issued by the state alcoholic beverage control board.

(c) *Application; approval by council.*

(1)  All initial applications for a license shall be presented in writing at a regular meeting of the city council. The application shall be upon the appropriate form supplied by the city clerk and shall be signed and verified by oath or affirmation by the owner; in the case of a partnership, association or unincorporated enterprise, by a partner or member thereof; or in the case of a corporation by an executive officer thereof. The applicant shall deposit with the city clerk a filing fee of one hundred dollars ($100.00).

(2)  An application for which the consent and the approval of the city council is sought shall contain all the information required, by the appropriate form, for the classification of alcoholic beverage license being applied for. Failure to submit information as prescribed therein shall render the application to the city void.

(3) A license shall not be finally approved or denied until the next regular meeting of the city council; however, any application may be held under advisement for a longer period. No initial license shall be issued except on approval of the city council in a regular meeting, and the city council may in such regular meeting direct that any renewal license, specifying the particular license, be withheld.

(d) *Criteria for approval.* In rendering a decision on each application, the city council shall consider, among others, the following factors:

(1) The wishes and desires of the residents, real property owners and businesses within five hundred (500) feet of the property for which a license is sought.

(2) The character and reputation of the applicant and each partner, member, officer, member of board of directors, landlord and club manager.

(3) The criminal court records of the applicant and each partner, member, officer, member of the board of directors, landlord and club manager.

(4) The location of premises for which a liquor license is sought and the number of establishments presently holding liquor licenses for lounges, clubs, hotels and restaurants whose place of business is within five hundred (500) feet of the property for which a liquor license is sought.

(5) The compliance by the applicant and each partner, member, officer, member of the board of directors, landlord and club manager with the laws of the state and ordinances of the city.

The city council may refuse to approve a liquor license for a club when it appears that the operation would inure to the benefit of individual members, officers, agents or employees of the club rather than to the benefit of the entire membership of the club, or the licensee shows intent to sell alcoholic beverages for off-premises consumption on Sunday.

(e) *Bond.*

(1) If the city council decides to approve a lounge retail liquor license, a club retail liquor license, a restaurant retail liquor license for a hotel, or a restaurant retail liquor license for a restaurant, the city council shall approve the license only upon the condition that the lounge, club, hotel or restaurant licensee shall deliver to and maintain with the city a bond executed by the licensee and by some surety company authorized to do business in the city, payable to the city, in the sum of five thousand dollars ($5,000.00) as liquidated damages and conditioned that the licensee will comply with the laws of the state and the ordinances of the city, including but not limited to this article, relating to a lounge retail liquor licensee, a club retail liquor licensee, a restaurant retail liquor licensee for a hotel, or a restaurant retail liquor licensee for a restaurant, as the case may be.

(2) The bond shall be a forfeiture or liquidated damages bond and not an indemnity bond. Such bond shall include an endorsement to the effect that it shall not be canceled without the consent of the city council. The city may declare the bond forfeited as liquidated damages in its full amount of five thousand dollars ($5,000.00) upon the breach of any one (1) or more of the conditions. In lieu of the bond, such lounge, club, hotel or restaurant licensee may deposit with the director of finance of the city cash in the amount of five thousand dollars ($5,000.00) upon the same conditions and subject to forfeiture as set forth in this section. Failure by the city to declare the bond or deposit forfeited in the case of a breach of any one (1) or more of the conditions shall not operate as a waiver to do so in the event of any subsequent breach of any one (1) or more of the conditions.

(Ord. No. 15-87, § 8-70, 9-28-87; Ord. No. 16-87, 11-9-87)

## Sec. 3-58. Proximity of establishment to church, school or playground.

(a) No privilege license shall be issued for the retail sale of alcoholic beverages where the en-

trance of the establishment for which such license is applied for is less than five hundred (500) feet from the main entrance of any church building, public or private school building, YMCA building or public playground. Such distance shall be set out and measured in a straight line.

(b) Where the church, public or private school or YMCA building was established after the licensed premises began operation under the license provided herein, and such operation has not been abandoned or discontinued for a period of six (6) months, the above distance restrictions do not apply.

(c) When measuring from a church, public or private school, or YMCA, the closest property line or lot line shall constitute the beginning point for measurement of property owned by either a church, YMCA or a public or private school. When measuring from the licensed premises, the closest point of the closest exterior of the building shall be used for measurement purposes.
(Ord. No. 16-96, 11-6-96)

**Secs. 3-59—3-70. Reserved.**

## DIVISION 3. LEVY OF LICENSE FEE

**Sec. 3-71. Generally.**

In addition to all other taxes imposed by law, any person, prior to the sale of any liquor, including wines and malt beverages, within the city, and prior to receiving a license from the city for such purpose, shall pay to the city an annual license fee. The license fee is fixed in this division and shall be in the amounts indicated in this division. Failure to continuously meet the requirements of a license specified shall be sufficient reason for revoking the license.
(Ord. No. 15-87, § 8-72, 9-28-87)

### Sec. 3-72. Beer wholesaler license.

Each person licensed as a beer wholesaler under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of two hundred fifty dollars ($250.00). In addition, each licensee will remit to the city clerk, on forms provided by the clerk, each month, the privilege or excise tax levied on the sales of beer by the Uniform Beer Tax Act (Code of Ala. 1975, § 28-3-190 et seq.). Wholesale beer dealers and distributors will not sell to any retail outlet that does not have a current city beer license.

(Ord. No. 15-87, § 8-72(a), 9-28-87)

### Sec. 3-73. Wine wholesaler license.

Each person licensed by the state alcoholic beverage control board as a wine wholesaler under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of two hundred seventy-five dollars ($275.00). In addition, each licensee will remit to the city clerk, on forms provided by the clerk, each month, the privilege or excise tax levied on the sales of table wine by the Alabama Table Wine Act (Code of Ala. 1975, § 28-7-1 et seq.). Wholesale wine dealers will not sell to any retail outlet that is not properly licensed by the city to sell wine.

(Ord. No. 15-87, § 8-72(b), 9-28-87)

### Sec. 3-74. Beer and wine wholesaler license.

Each person licensed as a beer and wine wholesaler under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of three hundred seventy-five dollars ($375.00). In addition, each licensee will remit to the city clerk, on forms provided by the clerk, each month, the privilege or excise tax levied on the sales of beer by the Uniform Beer Tax Act (Code of Ala. 1975, § 28-3-190 et seq.). In addition, each licensee will remit to the city clerk, on forms provided by the clerk, each month, the privilege or excise tax levied on the sales of table wine by the Alabama Table Wine Act (Code of Ala. 1975, § 28-7-1 et seq.).

(Ord. No. 15-87, § 8-72(c), 9-28-87)

### Sec. 3-75. Warehouse license.

Each person licensed by the state alcoholic beverage control board to receive, store or warehouse alcoholic beverages within the state for transshipment inside and outside the state shall pay to the city an annual license fee of two hundred dollars ($200.00).

(Ord. No. 15-87, § 8-72(d), 9-28-87)

### Sec. 3-76. Club retail liquor license.

Each person licensed by the state alcoholic beverage control board to operate a club, class I or class II, under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of one thousand dollars ($1,000.00) if a class I club, and one thousand five hundred dollars ($1,500.00) if a class II club. In addition to the stated license fee, each person shall pay to the city, on or before the fifteenth day of the calendar month next succeeding each separate calendar month, for the privilege of having engaged in such business, an additional license tax of ten (10) percent of the gross receipts of such business derived from the sale of all alcoholic beverages, except beer and table wines, received during such immediate next preceding calendar month.

(Ord. No. 15-87, § 8-72(e), 9-28-87)

### Sec. 3-77. Lounge retail liquor license.

Each person licensed by the state alcoholic beverage control board to operate a retail liquor lounge under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of one thousand five hundred dollars ($1,500.00). In addition to the stated license fee, each such retail liquor lounge licensee shall pay, on or before the fifteenth day of the calendar month next succeeding each separate calendar month, for the privilege of so engaging in such business in the calendar month, an additional license tax of ten (10) percent of the gross receipts of all such business derived from the sale of alcoholic beverages, except beer and table wines, received during such immediate next preceding month.

(Ord. No. 15-87, § 8-72(f), 9-28-87)

### Sec. 3-78. Retail license for off-premises consumption.

Each person licensed by the state alcoholic beverage control board to sell liquor, wine, table wine and beer at retail for off-premises consumption

under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of one thousand five hundred dollars ($1,500.00).
(Ord. No. 15-87, § 8-72(g), 9-28-87; Ord. No. 16-87, 11-9-87; Ord. No. 4-92, 2-24-92)

### Sec. 3-79. Restaurant retail liquor license.

Each person licensed by the state alcoholic beverage control board to sell alcoholic beverages in connection with the operation of a restaurant under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of one thousand dollars ($1,000.00). In addition to the stated license fee, each such person shall pay to the city, on or before the fifteenth day of the calendar month next succeeding each separate calendar month, for the privilege of having engaged in such business, an additional license tax of ten (10) percent of the gross receipts of all such business derived from the sale of all alcoholic beverages, except beer and table wine, received during such immediate next preceding calendar month.
(Ord. No. 15-87, § 8-72(h), 9-28-87)

### Sec. 3-80. Retail table wine license for off-premises consumption.

Each person licensed by the state alcoholic beverage control board to sell table wine at retail for off-premises consumption under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of seventy-five dollars ($75.00).
(Ord. No. 15-87, § 8-72(i), 9-28-87)

### Sec. 3-81. Retail table wine license for on-premises and off-premises consumption.

Each person licensed by the state alcoholic beverage control board to sell table wine at retail for on-premises and off-premises consumption under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of seventy-five dollars ($75.00), unless such person shall have paid for an on-premises liquor license.
(Ord. No. 15-87, § 8-72(j), 9-28-87)

### Sec. 3-82. Retail beer license for on-premises or off-premises consumption.

Each person licensed by the state alcoholic beverage control board to sell beer for on-premises

and off-premises consumption under Code of Ala. 1975, § 28-3A-1 et seq., shall pay the city an annual license fee of seventy-five dollars ($75.00).
(Ord. No. 15-87, § 8-72(k), 9-28-87; Ord. No. 16-87, 11-9-87)

### Sec. 3-83. Retail beer license for off-premises consumption.

Each person licensed by the state alcoholic beverage control board to sell beer for off-premises consumption under Code of Ala. 1975, § 28-3A-1

et seq., shall pay to the city an annual license fee of fifty dollars ($50.00).
(Ord. No. 15-87, § 8-72(l), 9-28-87)

### Sec. 3-84. Special retail liquor license.

Each person who has obtained a special retail liquor license from the state alcoholic beverage control board under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city a license fee of one hundred dollars ($100.00) when the period of use is thirty (30) days or less. Such person shall pay a license fee of two hundred fifty dollars ($250.00) when the period of use is more than thirty (30) days. In addition to the stated license fee, each such person shall pay to the city, on or before the fifteenth day of the calendar month next succeeding each separate calendar month, for the privilege of having engaged in such business, an additional license tax of ten (10) percent of the gross receipts of all such business derived from the sale of all alcoholic beverages, except beer and table wine, received during such immediate next preceding calendar month.
(Ord. No. 15-87, § 8-72(m), 9-28-87)

### Sec. 3-85. Special events retail liquor license.

Each person who has obtained a special events retail liquor license from the state alcoholic beverage control board under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city a license fee of one hundred fifty dollars ($150.00). No such license shall be issued for a period in excess of seven (7) days. Such alcoholic beverages as are authorized by the board may be sold. All applications for special events licenses shall be filed with the director of revenue at least one hundred twenty (120) days in advance of the event for which a license is sought. In addition to the stated license fee, each such person shall pay to the city, on or before the fifteenth day of the calendar month next succeeding each separate calendar month, for the privilege of having engaged in such business, an additional license tax of ten (10) percent of the gross receipts of all such business derived from the sale of all alcoholic beverages, except beer and table wine, received during such immediate next preceding calendar month.
(Ord. No. 15-87, § 8-72(n), 9-28-87)

### Sec. 3-86. Manufacturer license.

Each person who has obtained a manufacturer license from the state alcoholic beverage control board under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of two hundred fifty dollars ($250.00).
(Ord. No. 15-87, § 8-72(o), 9-28-87)

### Sec. 3-87. Importer license.

Each person who has obtained an importer license from the state alcoholic beverage control board under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of two hundred fifty dollars ($250.00).
(Ord. No. 15-87, § 8-72(p), 9-28-87)

### Sec. 3-88. Liquor wholesale license.

Each person who has obtained a liquor wholesale license from the state alcoholic beverage control board under Code of Ala. 1975, § 28-3A-1 et seq., shall pay to the city an annual license fee of five hundred dollars ($500.00).
(Ord. No. 15-87, § 8-72(q), 9-28-87)

### Secs. 3-89—3-100. Reserved.

### DIVISION 4. TAXES

### Sec. 3-101. Levied.

There is hereby levied, in addition to all other taxes of every kind imposed by law, and shall be collected as provided in this division, a privilege or license tax against the person on account of the business activities as follows:

(1) Upon every person, firm and corporation engaged in the business of selling whiskey, wine or liquor at retail there is hereby levied an additional privilege or license tax of ten (10) percent of the gross receipts of all such business derived from the sale of all alcoholic beverages, except beer and table wine.

(2) Taxes on the sale of beer and malt beverages shall be made in accordance with Tit. 28, Ch. 3, Art. 5B (§ 28-3-190 et seq.), Excise Tax on Beer, of the Code of Alabama 1975, as amended.

(3) Taxes on the sale of table wine are taxed under the Alabama Table Wine Act (Code of Ala. 1975, § 28-7-1 et seq.) and shall be deducted from the amount considered gross receipts considered under this section.

(Ord. No. 15-87, § 8-73, 9-28-87)

### Sec. 3-102. Reports and payments; delinquency penalty.

(a) The tax levied under provisions of this division shall be due and payable in monthly installments on or before the fifteenth day of the month next succeeding the month in which sales are made. On or before the fifteenth day of each month after the tax provided in this division shall take effect, every person, firm or corporation upon whom the tax is levied shall render to the city, on a form prescribed by the city, a true and correct statement showing the gross receipts of whiskey, wine or liquors, and the like sold during the preceding month, which report shall accompany payments of the tax levied in this division.

(b) The city shall receive a purchasing statement from the state alcoholic beverage control store the first of each month. Each licensee shall have until the fifteenth of the month to pay these taxes.

(c) The tax imposed by this division shall be paid by each retail beer dealer to the wholesale dealer from whom the retail dealer purchases or otherwise acquires his retail stock, at the rates fixed, on or before the fifteenth day of the month next succeeding the date of purchase by the retailer.

(d) Any person who fails to pay the tax levied in this division within the time prescribed shall pay, in addition to the tax, a penalty of ten (10) percent of the amount of tax, together with the interest thereon, at the rate of one and one-half (1½) percent per month or fraction thereof, from the date on which the tax levied in this division became payable, such penalty and interest to be assessed and collected as part of the tax.

(Ord. No. 15-87, § 8-74, 9-28-87)

### Sec. 3-103. Collection from purchasers.

All persons subject to the provisions of the tax levied under this division shall add the tax to the sales price of the whiskey, wine or liquor sold, and collect the tax from the purchasers.

(Ord. No. 15-87, § 8-75, 9-28-87)

### Sec. 3-104. Records.

All persons subject to provisions of the tax levied under this division shall keep and preserve for a period of three (3) years all invoices, sales slips or evidences received from or issued by the state alcoholic beverage control store or agency from which purchases are made, which will be subject to examination at all reasonable times by authorized representatives of the city.

(Ord. No. 15-87, § 8-76, 9-28-87)

### Secs. 3-105—3-115. Reserved.

### DIVISION 5. SEXUAL CONDUCT; NUDITY

### Sec. 3-116. Definitions.

The following words, terms and phrases, when used in this division, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

*Establishment dealing in alcoholic beverages* means any business establishment operating within the corporate limits of the city which sells, dispenses or allows the consumption of alcoholic beverages on the premises.

*Person* means any individual, firm, association, joint venture, partnership, estate, trust, business trust, syndicate, fiduciary, corporation, or any combination thereof, or other entity.

*Vulgar, distasteful or immoral act* means any act performed for the purpose of arousing the sexual desires or attitudes of patrons, employees, owners or operators.

(Ord. No. 15-87, §§ 8-90, 8-91, 9-28-87)

### Sec. 3-117. Purpose of division.

The purpose of this division is to prohibit sexual conduct and nudity in establishments dealing in alcoholic beverages and prohibit persons owning, maintaining or operating such establishments from permitting any such prohibited activity.

(Ord. No. 15-87, § 8-89, 9-28-87)

## Sec. 3-118. Prohibited acts.

(a) No person shall expose to public view his or her genitals, pubic area, vulva, anus, anal cleft or cleavage or any simulation thereof in an establishment dealing in alcoholic beverages.

(b) No person shall expose to public view any portion of their breasts below the top of the areola or any simulation thereof in an establishment dealing in alcoholic beverages.

(c) No person maintaining, owning or operating an establishment dealing in alcoholic beverages shall suffer or permit any person to expose to public view his or her genitals, pubic area, vulva, anus, anal cleft or cleavage or simulation thereof in an establishment dealing in alcoholic beverages.

(d) No person maintaining, owning or operating an establishment dealing in alcoholic beverages shall suffer, or permit any person to expose to public view any portion of their breasts below the top of the areola or any simulation thereof in an establishment dealing in alcoholic beverages.

(e) No person shall engage in and no person maintaining, owning or operating an establishment dealing in alcoholic beverages shall suffer or permit any person to engage in any sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, any sexual act which is prohibited by law, touching, caressing or fondling of the breasts, buttocks, anus or genitals or the simulation thereof within an establishment dealing in alcoholic beverages.

(f) No person maintaining, owning or operating an establishment dealing in alcoholic beverages shall allow any sexual demonstration, entertainment, exposition or contest, to include wet shirt, or any other vulgar, distasteful or immoral act on the premises.

(g) No licensee shall permit the showing of films, still pictures, electronic reproductions or other visual reproductions depicting any of the acts prohibited by this section, or any such acts which are prohibited by law.
(Ord. No. 15-87, § 8-91, 9-28-87)

## Secs. 3-119—3-130. Reserved.

## DIVISION 6. VIOLATIONS

## Sec. 3-131. Failure to pay license tax.

It shall be unlawful for any person who is required to pay the license or privilege tax provided for in this division to fail to pay the tax at the time specified in this division, and such offense shall be a continuing offense against the city and each day during which the person shall sell or store such beverages in the city during such default shall constitute a separate offense.
(Ord. No. 15-87, § 8-83, 9-28-87)

## Sec. 3-132. Sale of unstamped beer.

It shall be unlawful for any retail beer dealer to have, hold, possess, sell or offer for sale within the corporate limits of the city any beer, the container of which does not have securely affixed thereto decal stamps of the nature and in the amount as provided and required by law.
(Ord. No. 15-87, § 8-84, 9-28-87)

## Sec. 3-133. Delivery of unstamped beer.

It shall be unlawful for any wholesale beer dealer to ship or deliver, directly or otherwise, any beer to or within the corporate limits of the city which does not have securely affixed to each container thereof as provided and required by law the decal stamps issued therefor.
(Ord. No. 15-87, § 8-85, 9-28-87)

[The next page is 175]

Case 2:08-cv-00136-MEF-SRW    Document 1    Filed 03/10/2008    Page 29 of 48

THIS LICENSE MUST BE PUBLICLY DISPLAYED

| THIS LICENSE EXPIRES **12/31/2007** **NOTICE** License issued subject to compliance with all pertinent city codes. | **CITY OF CLANTON** P.O. BOX 580 CLANTON, AL  350460000 **LICENSE** | No.  **307740** LICENSE VALID   ONLY AT LOCATION INDICATED. NON TRANSFERABLE |

---

|  **Mailing Name and Address**  |  **Local Trade Name and Physical Location**  |
| --- | --- |
| ANWAR SULTAN SILVER STEER, INC. DBA COUNTRY NIGHTS 1448 BERRY ROAD BIRMINGHAM          AL      35226 | ANWAR SULTAN SILVER STEER, INC. DBA COUNTRY NIGHTS 800 JACKSON AVENUE CLANTON            AL      35045 |

THE FIRM, CORPORATION, ORGANIZATION, BUSINESS OR PERSON,  WHOSE NAME APPEARS ABOVE, HAS PAID
THE REQUIRED LICENSE FEES AND IS AUTHORIZED TO ENGAGE IN BUSINESS IN THIS CITY AS INDICATED BELOW.

| Account Number | License Number | Receipt /Document |
| --- | --- | --- |
| 006477 | 307740 | 307740 /   1034 1 |

| Code | Description |
| --- | --- |
| 2120 | RESTAURANTS |
| 9515 | BILLIARD ROOM OR POOL ROOM |
| A | Adjustments |

Date Issued:      8/29/2007

CLANTON

AL

*Delva Orange*

**DEBRA ORANGE**

EXHIBIT B

# City of Clanton

**N⁰   058**

### ALCOHOLIC BEVERAGE
# LICENSE
# 2006-07

$ 1,500 00

Penalty $ 225 00

Total -- $ 17.25 00

This is to certify that _Silver Steer, Inc_

has paid to the Clerk of Clanton, Alabama

_One Thousand Seven Hundred Twenty Five_ ............ Dollars

for the privilege of engaging in business as (Sec. 8-72) ...................

........................ _Class II Club Liquor_ ....................

Address _800 Jackson Avenue, (1448 Berry Road, Birmingham, 35226_

in the City of Clanton, Alabama, for the fiscal year 2006-07.

Issued this ............ _1st_ ............ day of ............ _November_ ............ , 20 _06_

This License expires September 30, 2007.

This is to certify that the person or firm named above is authorized to conduct the business listed under the name shown on Line 1 in the City of Clanton, Alabama until September 30, 2007.

Licenses issued by the city for the sale of alcoholic beverages shall be conspicuously and constantly exposed under a transparent and visible substance on the licensed premises.

_Delma Orange_

City Clerk.

EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| SILVER STEER, INC., d/b/a Zona Rosa<br>Nightclub, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No.: 2:08CV136-MEF |
| | ) |
| THE CITY OF CLANTON, | ) |
| ALABAMA, | ) |
| | ) |
| Defendant. | ) |

---

### AFFIDAVIT

---

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF JEFFERSON | ) |

Comes now the undersigned and being first duly sworn, deposes and says:

My name is Anwar Sultan. I am over the age of nineteen (19) and I have personal knowledge of the facts set forth in this affidavit.

I am the manager and operator of Zona Rosa Night Club. The testimony in this affidavit is offered In such capacity and as part of my job responsibilities in the regular and ordinary course of business. In the Fall of 2007, I received notice that I needed to pay for Zona Rosa's liquor license. I immediately visited the clerk's office and attempted to deliver a check for that purpose. I was told by the City Clerk, Ms. Deborah Orange, that she could accept my check. She did not explain why. I returned to City Hall in December 2007, near Christmas time, and saw Ms. Orange again and she again refused to take my check without explanation. In January I returned to City Hall once again and again attempted to pay for Zona Rosa's license. This time, Ms. Orange told me that she could not accept payment and could not issue the license. Again, she did not explain

EXHIBIT D

why.   On this third visit I asked Ms. Orange to make a written note about the City's refusal to

accept payment for my license. She did so and a copy of her handwritten note is attached to this

affidavit and incorporated herein.

      Further the affiant saith not.

                               _____
                               Affiant

Sworn to and subscribed before me
this 28th day of Feby, 2008.

                               _____
                               Notary Public
                               My Commission Expires: 8/15/11



**ABC BOARD**

Alabama Alcoholic Beverage Control Board

Emory Folmar
*Administrator*

Chester Weeks
*Assistant Administrator*

R. Frank Buckner
*Board Chairman*

Samuetta H. Drew
*Board Member*

Robert W. "Bubba" Lee
*Board Member*

January 11, 2008

<u>By Facsimile and U.S. Mail</u>


**EXHIBIT E**

William T. Denson
P.O. Box 90
Goodwater, AL 35072-0090

Re:    Zona Rosa Night Club
       800 Jackson Avenue
       Clanton, Chilton County, Alabama
       License Status

Dear Mr. Denson:

I write in order to help clarify the current situation regarding the ABC Club Liquor License, issued in the name of Silver Steer, Inc., for the establishment known as "Zona Rosa Night Club" in Clanton.

The ABC License Division installed a new data storage and printing system last summer, but technical problems delayed the actual printing of the 2008 license certificates.

None of our licensees received their license certificates at the usual time last fall, although we are now printing them and should have all issued in the near future.

Therefore, although they do not have a license certificate in their possession, the Zona Rosa is considered to be licensed by the ABC Board as a Club Liquor Licensee (Type 032), for the 2008-2009 license year.

I hope this helps to clarify the situation.

Sincerely,

Robert L. Martin III
ABC Board - Legal

RLM/nds

PS: I have been out much of today and do not know the final decision of the Hearing Commission. The Enforcement Division compiles a Notice of their findings and decision, and should serve either you or your client in the next few days.

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SILVER STEER, INC., d/b/a Zona Rosa Nightclub, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 2:08CV136-MEF |
| | ) | |
| THE CITY OF CLANTON, ALABAMA, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

---

**AFFIDAVIT**

---

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF JEFFERSON | ) |

Comes now the undersigned and being first duly sworn, deposes and says:

My name is Anwar Sultan. I am over the age of nineteen (19) and I have personal knowledge of the facts set forth in this affidavit.

On February 28, 2008, at the advice of legal counsel I appeared in the Clanton City Clerk's Office and attempted to obtain a 2008 City Club License. I presented Silver Steer's current State ABC Board License Certification and I offered to tender the necessary fee for the City Club License. Ms. Orange refused to accept the payment and/or to issue and/or renew Silver Steer's license.

During the three years of its existence (the first such year under the name Country Nights), the Zona Rosa Night Club has been cited for two noise violations and one violation regarding the use of a pool table. I am not aware of any other violations.

I am originally from Pakistan. The Zona Rosa Night Club is a club that caters to the

Hispanic population in Clanton and the Chilton County area.  The overwhelming majority of the club's patrons as well as the staff are Hispanic.

Further the affiant saith not.

x _____
Affiant

Sworn to and subscribed before me
this ____ day of _____, 2008.

_____
Notary Public
My Commission Expires: _____



# The Clanton Advertiser

## Council denies club license to Zona Rosa

*By Mike Kelley*

Clanton's City Council last night passed a motion that ordered City Clerk Debbie Orange to not sell a club license to Silver Steer, operating as Zona Rosa. The motion passed unanimously.

Clanton Mayor Billy Joe Driver said the action was taken due to "numerous violations of the city's rules for operating a club." He said 70 people last weekend were in the club who did have proper identification or a club membership as required by city ordinance.

"There is inadequate parking at the club, and several other violations have occurred there," Driver told the council. Driver said the club had been investigated by the Alabama Bureau of Beverage Control as well.

Without a license, the business cannot operate as a club.

In other business, the council adopted an ordinance that brings the city's animal control ordinance in compliance with state law and rescinded a resolution passed at the last meeting to accept federal funds for a matching fund grant for the city's Water Treatment Plant. Other grants obtained for the project increased the city's matching funds to $1 million. The council passed another resolution approving the new matching fund amount.

When asked by council member Ronnie Porter for an update on the construction of the Enterprise Road Bridge, Driver said he hopes the bridge would be completed by early February.

The council approved a motion for Orange to attend a city clerk certification seminar in Tuscaloosa and a resolution authorizing Sally Wall and David Baker, both of the city's parks department, to attend a turf seminar in Montgomery.

It also passed a motion that approved an agreement for the purchase of a bomb dog with the Chilton County Board of Education. The agreement with the seller states that the dog will be given a health inspection to make sure it is healthy, especially free of heartworms. The agreement also states the bomb dog will be checked again in six months to make sure it is still clear of heartworms.

Police Chief James Henderson said the seller would have to "make the dog good" if heartworms are found in the six-month checkup.

Charles Traywick asked the council to consider revising its current rezoning application to make sure the city's zoning board can easily determine if all requirements are met by the person requesting the rezoning. He also asked that terminology used in the application have the same meaning as the zoning ordinance itself, to clear up any misunderstandings.

Traywick said he wanted to make the request of the council after an application for rezoning property on Highway 31 South presented to the zoning board last week was confusing. Traywick owns property adjacent to the property under rezoning consideration.

Mayor Driver said the council would consider the request.

### Police take closer look at Maple Springs fire

Chilton County Sheriff's investigators went back to the Maple Springs Baptist Church fire site yesterday to determine whether or not there was any connection with Saturday's burglary-arson at Providence No. 1 Baptist Church.

### Honoring confederate vets

Two organizations will converge upon an historic Chilton County cemetery this Saturday to honor three Confederate States of America veterans.

### Former Clanton councilmember dies yesterday

Former Clanton City Council member Donnie Nelson died Monday morning at Brookwood Medical Center in Birmingham. He had been diagnosed recently with cancer.

### MySpace agrees to adopt rules to stop predators

NEW YORK - Under mounting pressure from law enforcement and parents, MySpace agreed Monday to take steps to protect youngsters from online sexual predators and bullies, including searching for ways to better verify users' ages.

### Commission looks at moving metal detectors

The Chilton County Commission yesterday discussed what the priority should be for the building in which it does business: safety or convenience.

### Council denies club license to Zona Rosa

Clanton's City Council last night passed a motion that ordered City Clerk Debbie Orange to not sell a club license to Silver Steer, operating as Zona Rosa. The motion passed unanimously.

### Commissioner Wyatt to run for tax assessor office

Several people threw their hats into the ring for various elected offices last night during a Chilton County Republican Party meeting, among them Allen Wyatt for the office of County Tax Assessor.

## Maplesville approves three-percent pay raise for workers

MAPLESVILLE - All Maplesville town employees will see a pay increase beginning with the next pay period.

## CORRECTION

The Clanton Advertiser would like to correct two errors that appeared in a story entitled "Local student keeps chasing dreams in the face of cancer," which was published in the Sunday, Jan. 13 edition. The story incorrectly stated that Maplesville High School senior Jason Stone "is not spending his time being thankful to everyone who helped him believe in getting better." Stone is in fact very thankful. The story also indicated Stone had received three chemotherapy treatments, when in fact he had only received two. The Clanton Advertiser regrets the errors and is happy to set the record straight.

Front : News : Sports : Classifieds : Opinion : Obituaries : Features : Weather : Subscribe : Services

© Copyright Clanton Advertiser, All Rights Reserved.

A Boone Newspapers Inc. publication.

STATE OF ALABAMA

CHILTON COUNTY

REGULAR MEETING

JANUARY 14, 2008

THE CITY COUNCIL OF THE CITY OF CLANTON, ALABAMA, COUNTY OF CHILTON, MET IN REGULAR SESSION AT THE CLANTON CITY HALL AT 5:00 P.M. ON JANUARY 14, 2008. MAYOR BILLY JOE DRIVER CALLED THE MEETING TO ORDER, UPON ROLL CALL THE FOLLOWING WERE FOUND TO BE PRESENT:

BILLY JOE DRIVER
MAYOR

RONALD PORTER
ANN BAKER
ELEM HILL
ROBERT K. EASTERLING
MARY MELL SMITH
COUNCILMEMBERS

DEBRA ORANGE, CITY CLERK
JOHN HOLLIS JACKSON, JR., ATTORNEY

THOSE FOUND TO BE ABSENT: NONE

COUNCILMEMBER SMITH MADE THE MOTION TO APPROVE THE MINUTES OF DECEMBER 20, 2007. THE MOTION WAS SECONDED BY COUNCILMEMBER BAKER, VOTE IN FAVOR WAS UNANIMOUS.

COUNCILMEMBER BAKER MADE THE MOTION TO APPROVE THE FOLLOWING BILLS FOR PAYMENT. THE MOTION WAS SECONDED BY COUNCILMEMBER PORTER, VOTE IN FAVOR WAS UNANIMOUS.

| | |
|---|---:|
| CHILTON CONTRACTORS, INC. | $ 39,125.00 |
| CHILTON/CLANTON PUBLIC LIBRARY | 25,000.00 |
| CHILTON COUNTY CHAMBER OF COMMERCE | 10,000.00 |
| CHILTON COUNTY HUMANE SOCIETY | 7,500.00 |
| CHILTON PAVING & ASPHALT | 32,523.19 |
| GILCO CONTRACTING | 118,151.75 |
| HULL & RUSSELL, PC | 11,150.00 |
| MEYERCORD REVENUE COMPANY | 8,683.20 |
| MUNICIPAL WORKERS COMPNESATION FUND | 67,778.02 |
| NEWELL BUSH | 127,180.00 |
| TAYLOR-MADE TRANSPORTATION | 19,633.45 |
| W.H. THOMAS OIL COMPANY, INC. | 18,997.82 |

COUNCILMEMBER EASTERLING MADE THE MOTION TO RESCIND THE RESOLUTION PASSED ON DECEMBER 20, 2007 ON THE WATER SYSTEM IMPROVEMENT GRANT. THE MOTION WAS SECONDED BY COUNCILMEMBER BAKER, VOTE IN FAVOR WAS UNANIMOUS.

THE FOLLOWING RESOLUTION WAS THEN PRESENTED.

RESOLUTION

EXHIBIT H

WHEREAS, the Appalachian Regional Commission and the Environmental Protection Agency have the authority to award grants for water system improvements; and

WHEREAS, grant assistance is needed for Phase I of the Clanton Water Treatment Plant Upgrade Project; and

WHEREAS, based on a Pre-Application, the City of Clanton has been selected to receive a $ 200,000 Appalachian Regional Commission grant for upgrading the water treatment plant; and

WHEREAS, the City of Clanton anticipates making application to the Environmental Protection Agency for a State and Tribal Assistance Grant (STAG) in the amount of $ 1,067,089 as a result of Congressional appropriation for the purpose of upgrading the water treatment plant.

NOW, THEREFORE, BE IT RESOLVED by the Clanton City Council as follows:

1. That submission of a Grant Application to the Appalachian Regional Commission in the amount of $ 200,000 and a Grant Application to the Environmental Protection Agency in the amount of $ 1,067,089 are, hereby, authorized.

2. That the Mayor is authorized to sign any and all documents to obtain said grants.

3. That the City of Clanton will provide the 45% local share of the total project cost or $ 1,036,711.

THIS RESOLUTION IS, HEREBY, ADOPTED by the Clanton City Council this the 14[h] day of January, 2008. .

ATTEST:                                          SIGNATURE:

_Delua Orange_                                  _Billy Joe Driver_
Debra Orange, City Clerk                         Billy Joe Driver, Mayor

_January 14, 2008_                              _January 14, 2008_
Date                                            Date

COUNCILMEMBER SMITH MADE THE MOTION TO PASS THE ABOVE RESOLUTION WHICH WILL REPLACE THE RESOLUTION PASSED ON DECEMBER 20, 2007. THE MOTION WAS SECONDED BY COUNCILMEMBER PORTER, VOTE IN FAVOR WAS UNANIMOUS.

COUNCILMEMBER EASTERLING MADE THE MOTION TO APPROVE THE BEER LICENSE FOR RIVERA PRODUCE, LLC DOING BUSINESS AS MI PUEBLO SUPERMARKET LOCATED AT 210B

7TH STREET SOUTH. THE MOTION WAS SECONDED BY COUNCILMEMBER SMITH, VOTE IN FAVOR WAS UNANIMOUS.

COUNCILMEMBER BAKER MADE THE MOTION TO APPROVE DEBRA ORANGE ATTEND CERTIFICATION TRAINING FOR MASTER MUNICIPAL CLERK FEBRUARY 6TH THROUGH THE 8TH IN TUSCALOOSA. THE MOTION WAS SECONDED BY COUNCILMEMBER HILL, VOTE IN FAVOR WAS UNANIMOUS.

THE MOTION TO APPROVE SALLY WALL AND DAVID BAKER ATTEND A TURF SEMINAR IN MONTGOMERY ON FEBRUARY 6TH WAS MADE BY COUNCILMEMBER EASTERLING AND SECONDED BY COUNCILMEMBER BAKER, VOTE IN FAVOR WAS UNANIMOUS.

COUNCILMEMBER EASTERLING MADE THE MOTION TO HIRE TRENT GRAY PART TIME IN THE PARK EFFECTIVE JANUARY 18TH. THE MOTION WAS SECONDED BY COUNCILMEMBER BAKER, VOTE IN FAVOR WAS UNANIMOUS.

COUNCILMEMBER PORTER MADE THE MOTION TO HAVE MAYOR DRIVER SIGN THE PURCHASE AGREEMENT ON THE BOMB DOG. THE MOTION WAS SECONDED BY COUNCILMEMBER SMITH, VOTE IN FAVOR WAS UNANIMOUS.

THE FOLLOWING RESOLUTION WAS THEN INTRODUCED REGARDING VACATING ALLEY FOR JIMMY WAYNE EASTERLING.

RESOLUTION

WHEREAS, JIMMY WAYNE EASTERLING AND SANDRA DIAN EASTERLING ARE THE OWNERS OF ALL THE PROPERTY ABUTTING ON OR ADJACENT TO THE FOLLOWING DESCRIBED PROPERTY THAT IS PROPOSED TO BE VACATED, SITUATED IN THE CITY OF CLANTON, CHILTON COUNTY, ALABAMA:

> THE ALLEY SITUATED BETWEEN SEVENTH STREET AND THE
> L&N/CSX RAILROAD DESCRIBED AS FOLLOWS: FROM THE NORTH
> RIGHT-OF-WAY OF THIRD AVENUE TO THE SOUTH RIGHT-OF-WAY
> OF FOURTH AVENUE/HIGHWAY 22 BETWEEN THIRD AVENUE NORTH
> AND FOURTH AVENUE NORTH RUNNING WEST FROM THE WEST
> RIGHT-OF-WAY OF SEVENTH STREET TO THE EAST RIGHT-OF-WAY
> OF L&N/CSX RAILROAD.

WHEREAS, THE ABOVE OWNERS ARE DESIROUS OF VACATING SAID TRACT OF LAND DESCRIBED ABOVE AND REQUEST THAT THE ASSENT OF THE MAYOR AND COUNCIL OF THE CITY OF CLANTON, ALABAMA, BE GIVEN AS REQUIRED BY LAW IN SUCH CASES; SUBJECT, HOWEVER, TO ALL EXISTING RIGHTS OF WAY OR EASEMENTS FOR PUBLIC UTILITIES AND TO ALL UTILITY FACILITIES PRESENTLY SITUATED IN SAID VACATED AREA AND SUBJECT TO SAID PROPERTY OWNERS AGREEING TO MAINTAIN THAT PORTION OF THE EXISTING SEWER LINES EXTENDING NORTH FROM THE NORTH RIGHT-OF-WAY OF THIRD AVENUE NORTH;

THAT AFTER VACATION OF THE ABOVE DESCRIBED TRACT OF LAND, AND ALL PUBLIC RIGHTS AND EASEMENTS THEREIN, CONVENIENT MEANS OF INGRESS AND EGRESS TO AND FROM THE PROPERTY WILL BE AFFORDED TO ALL OTHER PROPERTY OWNERS OWNING PROPERTY IN OR NEAR THE TRACT OF LAND EMBRACED IN SAID MAP, PLAT OR SURVEY BY THE REMAINING STREETS, AVENUES, OR HIGHWAYS DEDICATED BY SAID MAP, PLAT OR SURVEY.

NOW, THEREFORE, BE IT RESOLVED BY THE MAYOR AND COUNCIL OF THE CITY OF CLANTON, ALABAMA, THAT THEY DO HEREBY ASSENT TO THE SAID JIMMY WAYNE

EASTERLING AND SANDRA DIAN EASTERLING VACATING SAID TRACT OF LAND AS DESCRIBED ABOVE AND THAT THE ABOVE DESCRIBED PROPERTY BE AND THE SAME IS HEREBY VACATED AND ANNULLED AND ALL PUBLIC RIGHTS AND EASEMENTS THEREIN DIVESTED OF THE PROPERTY; SUBJECT, HOWEVER, TO ALL EXISTING RIGHTS OF WAY OR EASEMENTS FOR PUBLIC UTILITIES AND TO ALL UTILITY FACILITIES PRESENTLY SITUATED IN SAID AREA VACATED HEREBY.

COUNCILMEMBER EASTERLING MADE THE MOTION TO PASS THE ABOVE RESOULTION. THE MOTION WAS SECONDED BY COUNCILMEMBER HILL, VOTE IN FAVOR WAS UNANIMOUS.

COUNCILMEMBER EASTERLING MADE THE MOTION TO ACCEPT THE BID RECEIVED ON DECEMBER 10, 2007 OF $21,622.99 FOR REPAIRS TO GARBAGE TRUCK. THE MOTION WAS SECONDED BY COUNCILMEMBER SMITH, VOTE IN FAVOR WAS UNANIMOUS.

COUNCILMEMBER PORTER MADE THE MOTION TO GRANT BILLY MIXON A MEDICAL LEAVE OF ABSENCE FOR THE PURPOSE OF SEEING ABOUT HIS ONLY SON IN CALIFORNIA. THE MOTION WAS SECONDED BY COUNCILMEMBER HILL, VOTE IN FAVOR WAS UNANIMOUS.

COUNCILMEMBER EASTERLING MADE THE MOTION TO HIRE HERDIS MINOR AS A PART TIME TRUCK DRIVER IN THE SANITATION DEPARTMENT. THE MOTION WAS SECONDED BY COUNCILMEMBER SMITH, VOTE IN FAVOR WAS UNANIMOUS.

THE FOLLOWING ORDINANCE WAS THEN INTRODUCED.

## ORDINANCE No. 1-08

**An Ordinance to Amend Ordinance No. 10-92,
An Ordinance Providing for Impounding Dogs
Running at Large on the Streets, Highways,
Or Alleys of the City of Clanton, a Municipal
Corporation, and providing for the
Redemption or Destruction of said Dogs,
Providing for Inoculation; Inoculation Tag
Required; Impounding of Dogs Found Running
At Large Not Bearing Current Inoculation
Tag; Impounding of Dogs Running at Large
On Premises Other Than Owner; Authorizing
Officers to go on Premises and Penalty For
The Violation Thereof; Providing or Employment
Of Dog Control Officer and Defining his Duties.**

BE IT ORDAINED by the City Council of the City of Clanton, Alabama, a municipal corporation, in a regular meeting assembled, that Ordinance No. 10-92 and any and all amendments thereto, be and the same is hereby, amended as follows:

Section 3.  Animal Inoculation Required:
Section 3 of said Ordinance No. 10-92 is deleted in its entirety and is amended by the addition thereto of the following:

145

It shall be unlawful for any person to own, possess, keep or harbor a dog within the City of Clanton without having such dog inoculated annually for rabies, as required by Section 3-7A-4 of the 1975 *Code of Alabama*, as last amended.

<u>Section 4.   Inoculation Tag--Required on Dogs at Large:</u>
Section 4 of said Ordinance No. 10-92 is deleted in its entirety and is amended by the addition thereto of the following:

It shall be unlawful for any person to permit to run or be upon a street, alley, sidewalk, thoroughfare or public place within the City, unless secured by a suitable leash, any dog which does not have attached to it a dog inoculation tag, as required by Section 3-7A-4 of the 1975 *Code of Alabama*, as last amended. Nothing contained in this Section shall be construed as permitting any such dog, whether tagged or untagged, to become a nuisance or to run at large upon the premises or any person other than the owner thereof.

Be it further ordained that all further terms and conditions of said ordinance, as last amended, are hereby confirmed and adopted except as herein provided.

Read, approved and adopted on this the 14th day of January, 2008.

CITY OF CLANTON, ALABAMA,
A municipal corporation

BY:

_____
Mayor

Authenticated:

_____
City Clerk

COUNCILMEMBER PORTER MOVED THAT ALL RULES GOVERNING THE COUNCIL WHICH MIGHT UNLESS SUSPENDED, PREVENT THE PASSAGE AND ADOPTION OF THE ORDINANCE AT THIS MEETING BE AND THE SAME ARE SUSPENDED FOR THE PURPOSE OF PERMITTING THE SAID ORDINANCE TO BE FINALLY PASSED AND ADOPTED AT THIS MEETING, COUNCILMEMBER EASTERLING SECONDED THE MOTION. THE QUESTION WAS PUT BEFORE THE COUNCIL ON ROLL CALL VOTE WITH THE FOLLOWING RESULTS

<u>AYES</u>
BILLY JOE DRIVER
ROBERT K. EASTERLING
RONALD PORTER
ANN BAKER
ELEM HILL
MARY MELL SMITH

146

NAYS
NONE

MAYOR DRIVER DECLARED THE MOTION ADOPTED BY UNANIMOUS VOTE AND RULES SUSPENDED.

COUNCILMEMBER BAKER MOVED THAT THE ORDINANCE NUMBER 1-08 BE BROUGHT ON FOR IMMEDIATE CONSIDERATION AND COUNCILMEMBER SMITH SECONDED THE MOTION. THE QUESTION NOW BEING PUT, A ROLL CALL WAS TAKEN WITH THE FOLLOWING RESULTS:

AYES
BILLY JOE DRIVER
ROBERT K. EASTERLING
RONALD PORTER
ANN BAKER
ELEM HILL
MARY MELL SMITH

NAYS
NONE

THEREUPON, COUNCILMEMBER SMITH MOVED THAT SAID ORDINANCE BE ADOPTED AS PRESENTED AND COUNCILMEMBER PORTER SECONDED THE MOTION. THE QUESTION NOW BEING PUT AS TO THE FINAL PASSAGE OF THE SAME, THE ROLL WAS CALLED WITH THE FOLLOWING RESULTS:

AYES
BILLY JOE DRIVER
ROBERT K. EASTERLING
RONALD PORTER
ANN BAKER
ELEM HILL
MARY MELL SMITH

NAYS
NONE

COUNCILMEMBER SMITH MADE THE MOTION TO REVOKE THE CLUB LICENSE FOR SILVER STEER, INC. DOING BUSINESS AS ZONA ROSA DUE TO NUMEROUS VIOLATIONS OF THE CITY'S RULES FOR OPERATING A CLUB. THE MOTION WAS SECONDED BY COUNCILMEMBER HILL, VOTE IN FAVOR WAS UNANIMOUS.

THERE BEING NO FURTHER BUSINESS TO COME BEFORE THE COUNCIL, UPON MOTION DULY MADE BY COUNCILMEMBER EASTERLING AND SECONDED BY COUNCILMEMBER PORTER, THE MEETING WAS ADJOURNED.

READ, APPROVED AND ADOPTED THIS THE 28TH DAY OF JANUARY 2008.

BILLY JOE DRIVER, MAYOR

ATTEST:

DEBRA ORANGE, CITY CLERK

147

State of Alabama
Unified Judicial System

ARJA - 20    7/94

**UNIFORM NON-TRAFFIC CITATION
AND COMPLAINT**
(For Scheduled Non-Traffic Violations or Misdemeanors)

Case Number

**IN THE MUNICIPAL COURT OF CLANTON, ALABAMA**

Law Enforcement Agency/Organization or Department
**CLANTON POLICE DEPARTMENT**

The undersigned complainant, being duly sworn, deposes and says that the person herein named committed the offense hereinafter set forth in that on or about:

| Month | Day | Year | At Approx | Time |
| 01 | 20 | 07 | | AM / PM / MT |

First Name: *Antwan*   Middle/Maiden Name   Last Name: *Sutton*

Street: *101 3rd Ave w*

City: *Birmingham*   State: *Al*   Zip: *35204*

Driver's License Number: *6963120*   State: *Al*   Expiration Date: *12 / 21 / 10*   Birth Date: *12 / 01 / 68*

| Height | Weight | Eyes | Hair | Social Security Number | Sex | Race |
| 509 | 190 | Bro | Bro | 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 | M | B |

Did violate: ☒ Ordinance Number *3.93* , which incorporates or encompasses Section _____ Code of Alabama 1975, within the city limits or police jurisdiction of _____ and /or ☐ Section _____ Code of Alabama 1975, or ☐ Rule/Regulation Number _____ within *Chilton* County at or near the following location (describe) *300 Jackson Ave* more particularly described in the DESCRIPTION OF OFFENSE section below

## DESCRIPTION OF OFFENSE

Offense or Short Description of Offense:
*City noise ord*

State Specific Facts Relating to Offense:
*Mr Sutton had an over a amount of noise coming from his bar the Zone Bar & Grill Approx 100 ft away*

| Sworn to and acknowledged before me this date | Month | Day | Year | Complainant's Signature |
| Signature and Title | | | | Officer I D: 225   AL   Agency O R I: 0140100 |

## COURT APPEARANCE INFORMATION

☐ Court Appearance Required

By signing this citation, I am promising to appear in court on the date and at the time specified below. If a court appearance is not required, I may choose to plead guilty before a magistrate or by mail or in person, paying the required fine and court costs prior to my scheduled court date, in which event I do not have to appear in court. If I do not appear in court on the scheduled date and if I do not plead guilty and pay the required fine and costs prior to that date, I promise to pay $ *500⁰⁰* upon a final forfeiture being entered by the court.
I also understand that failure to appear or to plead guilty and pay the fine and costs may result in a warrant being issued for my arrest on the present charge and I may also be charged with second degree bail jumping.

| Court Appearance Date (if applicable) | | | | Court Address: | Telephone |
| Month | Day | Year | Time ☐ AM ☐ PM | **CLANTON MUNICIPAL COURT** | |
| 02 | 06 | 07 | 7:00 | 601 1st Avenue (P.O. Box 580) Clanton, Alabama 35045 | 755-6669 |

Defendant's Signature:

Telephone

**NOTICE:** FAILURE TO APPEAR IN COURT AND/OR FAILURE TO REMIT FINE AND COSTS WILL RESULT IN AN ARREST WARRANT BEING ISSUED.

1. White -- Court   2. Pink -- Police   3. Canary -- Defendant

KINTRAY PRINTERS - 755-0355

State of Alabama
Unified Judicial System

ARJA - 20    7/94

**UNIFORM NON-TRAFFIC CITATION
AND COMPLAINT**
(For Scheduled Non-Traffic Violations or Misdemeanors)

Case Number

Law Enforcement Agency/Organization or Department
**CLANTON POLICE DEPARTMENT**

### IN THE MUNICIPAL COURT OF CLANTON, ALABAMA

The undersigned complainant, being duly sworn, deposes and says that the person herein named committed the offense hereinafter set forth in that on or about:

Month **01** Day **20** Year **07**   At Approx. Time **10:3** ☐AM ☐PM ☐MT

First Name **Anwar**    Middle/Maiden Name **Sultan**    Last Name

Street **101 3rd Ave W**

City **Birmingham**    State **AL**    Zip **35205**

Driver's License Number **6969134**    State **AL**    Expiration Date Month **02** Day **03** Year **10**    Birth Date Month **12** Day **01** Year **63**

Height **509**    Weight **170**    Eyes **Bro**    Hair **Bro**    Social Security Number **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**    Sex **M**    Race **W**

Did violate: ☒ Ordinance Number _____, which incorporates or encompasses Section _____. Code of Alabama 1975, within the city limits or police jurisdiction of _____, and /or ☐ Section _____. Code of Alabama 1975, or ☐ Rule/Regulation Number _____, within **Chilton** County at or near the following location (describe) **800 Jackson Ave** more particularly described in the DESCRIPTION OF OFFENSE section below

### DESCRIPTION OF OFFENSE

Offense or Short Description of Offense:
*Operating without a Business License*

State Specific Facts Relating to Offense:
*Mr. Sultan was operating pool tables without a license*

Sworn to and acknowledged before me this date   Month   Day   Year   Complainant's Signature

Signature and Title    Officer I D **225**    Agency O R I **AL 0140100**

### COURT APPEARANCE INFORMATION    ☐ Court Appearance Required

By signing this citation, I am promising to appear in court on the date and at the time specified below. If a court appearance is not required, I may choose to plead guilty before a magistrate or by mail or in person, paying the required fine and court costs prior to my scheduled court date, in which event I do not have to appear in court. If I do not appear in court on the scheduled date and if I do not plead guilty and pay the required fine and costs prior to that date, I promise to pay $ **500** , upon a final forfeiture being entered by the court.
I also understand that failure to appear or to plead guilty and pay the fine and costs may result in a warrant being issued for my arrest on the present charge and I may also be charged with second degree bail jumping.

Court Appearance Date (if applicable)   Month **02** Day **06** Year **07**   Time **3:00** ☐AM ☒PM   Court Address: **CLANTON MUNICIPAL COURT**
601 1st Avenue (P.O. Box 580)
Clanton, Alabama 35045   Telephone **755-6669**

Defendant's Signature: _____    Telephone

**NOTICE:** FAILURE TO APPEAR IN COURT AND/OR FAILURE TO REMIT FINE AND COSTS WILL RESULT IN AN ARREST WARRANT BEING ISSUED.

1. White -- Court    2. Pink -- Police    3. Canary -- Defendant

KINTRAY PRINTERS - 755-0355

EXHIBIT K

No. 2894

| State of Alabama<br>Unified Judicial System<br><br>ARJA - 20      7/94 | **UNIFORM NON-TRAFFIC CITATION**<br>**AND COMPLAINT**<br>(For Scheduled Non-Traffic Violations or Misdemeanors) | **Case Number** |
| --- | --- | --- |

**IN THE MUNICIPAL COURT OF CLANTON, ALABAMA**

Law Enforcement Agency/Organization or Department
**CLANTON POLICE DEPARTMENT**

The undersigned complainant, being duly sworn, deposes and says that the person herein named committed the offense hereinafter set forth in that on or about:

| | Month | Day | Year | At Approx | Time | ☐ AM<br>☐ PM<br>☑ MT |
| --- | --- | --- | --- | --- | --- | --- |
| | 0 3 | 1 7 | 0 7 | | 03:15 | |

First Name: ANWar    Middle/Maiden Name:    Last Name: Sutton

Street: 101 3rd Ave W1s

City: Birmingham    State:    Zip: 35004

Driver's License Number: 6858134    State: AL    Expiration Date: Month 10 Day 21 Year 07    Birth Date: Month 10 Day 11 Year 68

| Height | Weight | Eyes | Hair | Social Security Number | Sex | Race |
| --- | --- | --- | --- | --- | --- | --- |
| 509 | 190 | Blo | Blo | 358 81 3436 | M | I |

Did violate: ☐ Ordinance Number 2-07, which incorporates or encompasses Section _____, Code of Alabama 1975, within the city limits or police jurisdiction of _____, and /or ☐ Section _____, Code of Alabama 1975, or ☐ Rule/Regulation Number _____, within _____ County at or near the following location (describe): _____ more particularly described in the DESCRIPTION OF OFFENSE section below Noise Ordinance

**DESCRIPTION OF OFFENSE**

Offense or Short Description of Offense: Music Could be heard 100ft From Business (Building) Tona Rosa Bar

State Specific Facts Relating to Offense:

| Sworn to and acknowledged before me this date | Month | Day | Year | Complainant's Signature CPT Carlos M Bates |
| --- | --- | --- | --- | --- |
| Signature and Title | | | | Officer I D 209    AL 0140100 Agency O R I |

**COURT APPEARANCE INFORMATION**    ☐ Court Appearance Required

By signing this citation, I am promising to appear in court on the date and at the time specified below. If a court appearance is not required, I may choose to plead guilty before a magistrate or by mail or in person, paying the required fine and court costs prior to my scheduled court date, in which event I do not have to appear in court. If I do not appear in court on the scheduled date and if I do not plead guilty and pay the required fine and costs prior to that date, I promise to pay $ 500.00, upon a final forfeiture being entered by the court.

I also understand that failure to appear or to plead guilty and pay the fine and costs may result in a warrant being issued for my arrest on the present charge and I may also be charged with second degree bail jumping.

| Court Appearance Date (if applicable) | | | | Court Address: | **CLANTON MUNICIPAL COURT** | Telephone |
| --- | --- | --- | --- | --- | --- | --- |
| Month 0 | Day 4 1 7 | Year 0 7 | Time 9:00 ☐ AM ☐ PM | | 601 1st Avenue (P.O. Box 580)<br>Clanton, Alabama 35045 | 755-6669 |

Defendant's Signature:    X Anw    Telephone 205 787 0015

**NOTICE:** FAILURE TO APPEAR IN COURT AND/OR FAILURE TO REMIT FINE AND COSTS WILL RESULT IN AN ARREST WARRANT BEING ISSUED.

1. White -- Court        2. Pink -- Police        3. Canary -- Defendant

KINTRAY PRINTERS - - 755